**LAMAJAK, INC., Appellant,**

v.

**Timothy FRAZIN, Appellee.**

No. 05–05–01032–CV.

Court of Appeals of Texas, Dallas.

July 6, 2007.

Rehearing Overruled Aug. 22, 2007.

Michael V. Powell, Cynthia Keely Timms, Locke, Liddell & Sapp, LLP, Dallas, Christopher Dove, Locke, Liddell & Sapp, LLP, Houston, for Appellant.

Scott Griffith, Jeff Rusthoven, Griffith & Nixon, P.C., Nina Cortell, Warren D. Dod-

son, Haynes & Boone, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and FITZGERALD.

## OPINION

Opinion By Justice MORRIS.

Following a jury trial, the trial court rendered judgment upon appellee Timothy Frazin's election to recover the jury's award for breach of contract damages. In its appeal from the trial court's judgment, Lamajak, Inc. first contends the trial court erred in failing to apply the doctrine of res judicata to bar all of Frazin's claims and, further, abused its discretion in denying it leave to file a trial amendment on the issue. Lamajak next contends there is no evidence or insufficient evidence to support the jury's verdict in favor of Frazin and the attorney's fees awarded to him. Finally, Lamajak claims the amount of prejudgment interest awarded is incorrect and should be recalculated.

We conclude Frazin is not entitled to judgment for breach of contract but is entitled to judgment on the jury's findings of quantum meruit and attorney's fees. We agree with Lamajak that prejudgment interest was erroneously calculated. Accordingly, we reverse the trial court's judgment in part, affirm in part, and render judgment based on the jury's findings on the issue of quantum meruit.

## I.

At the center of the parties' dispute is an alleged oral agreement made by Timothy Frazin and Michael Cohen, who, at the time of the purported agreement, was president, chief executive officer, and part owner of Lamajak, Inc. According to Frazin, he and Cohen were good friends and their friendship involved various business dealings. The subject of those dealings was the collectible toys known as Beanie Babies.

Lamajak owned a large number of gift shops that sold a variety of products including Beanie Babies and other plush toys. In the mid 1990s, Frazin was involved in the collectibles market and became interested in selling Beanie Babies as a collectible. Frazin created a wholly owned corporation for the purpose of opening stores to sell Beanie Babies and to capitalize on what he saw as a growing market. In 1997, Frazin and Cohen agreed to an arrangement under which Lamajak would supply Frazin with a particular type of Beanie Baby and Frazin would split his profits with Lamajak. Both Lamajak and Frazin agree that this agreement was fulfilled by both sides. Frazin testified that the agreement was entirely oral. Cohen, on the other hand, contended there was a written memorialization of the agreement, but he could not produce a copy of the alleged writing.

At trial, Frazin testified that in early 1998, he had a discussion with Cohen in which Cohen stated Lamajak was going to cut back on its own Beanie Baby orders because he felt the market for them was going to decline and the toy's recent popularity was probably just a Christmas fad. Frazin disagreed. He told Cohen he believed the market would continue to stay strong. He further maintained he could help sell the toys through his connections and outlets. Frazin told Cohen he felt Lamajak could make over $10 million in profits on Beanie Babies in 1998. According to Frazin, Cohen was skeptical and stated he would be happy with $4 million to $5 million in profits. Cohen then allegedly told Frazin that he could have all of Lamajak's profits over $6 million. Frazin testified he repeated the offer to Cohen to make sure he had understood him correctly. When Cohen confirmed the offer, Frazin said they shook hands on the deal. Cohen, however, denied the conversation ever occurred.

Frazin testified that, following his conversation with Cohen, he changed the marketing strategy for his business to maximize the sale of Beanie Babies supplied by Lamajak and enhance Lamajak's profits. Several people who worked for Frazin in 1998 testified he told them his goal was to push Lamajak's profits over $6 million. To achieve this end, Frazin stated he rapidly opened stores and kiosks to sell Beanie Babies and advised and assisted Lamajak with its marketing of the product. Frazin testified that, throughout 1998, he would ask Cohen about Lamajak's profits and, toward the end of the year, he repeatedly asked whether it had reached the $6 million mark. Although Frazin conceded Cohen was vague in his answers, he stated Cohen never acted as though he did not understand the purpose of the inquiries and never denied the existence of the agreement. Cohen testified that, although he and Frazin frequently discussed the Beanie Baby market, Frazin never advised him on marketing and he never discussed whether Lamajak's profits had exceeded $6 million.

Frazin testified that in January 1999, he formally demanded payment pursuant to the oral agreement. He testified Cohen told him that the profits for 1998 had not yet been calculated. Later, Cohen told Frazin that he was selling his interest in Lamajak in January 2000. Frazin said Cohen told him he would be paid as soon as the sale took place.

In October 1999, Cohen advanced Frazin a personal loan of $225,000 so that Frazin could invest in a new collectible item. Frazin signed a promissory note made payable to Cohen that was due to be paid in full four months after the loan was made. Frazin testified that he discussed with Cohen the fact that, even if his investment did not work out, he would be able to repay Cohen quickly because he would receive his share of Lamajak's profits in a little over two months. Frazin failed to pay off the note on schedule and has never paid the amount in full.

Cohen eventually completed the sale of his interest in Lamajak on January 1, 2001. Despite Frazin's frequent requests for payment, Lamajak never paid him under the 1998 agreement. On January 16, 2001, however, Cohen sued Frazin for failing to pay him under the terms of the promissory note. Frazin's initial responses to the suit did not mention the 1998 Beanie Baby agreement. It was not until his fourth amended answer that Frazin asserted counterclaims against Cohen and third-party claims against Lamajak based on allegations that Cohen and Lamajak made oral promises to Frazin that he would receive all profits made by Lamajak in 1998 that were in excess of $6 million.

Less than a year later, Frazin filed a partial non-suit of his claims against Cohen and a non-suit of all his claims against Lamajak. The only counterclaims remaining against Cohen were for usury, deceptive trade practices, slander, defamation, and intentional infliction of emotional distress. The trial court resolved Frazin's counterclaims against him. It granted a summary judgment in favor of Cohen on September 10, 2002. Frazin did not appeal that judgment.

In December 2002, Frazin filed the present lawsuit against Cohen and Lamajak alleging claims for, among other things, breach of contract, promissory estoppel, and quantum meruit based on the 1998 Beanie Baby agreement. Cohen moved for summary judgment on Frazin's claims arguing they were barred by the doctrine of res judicata. The trial court granted the motion, severed the claims against Cohen, and rendered a final judgment in his favor. Frazin appealed the summary judgment to this Court, and we affirmed the judgment as severed.

Lamajak also moved for summary judgment against Frazin on the basis of res judicata. The trial court denied Lamajak's motions, however, and Frazin's claims against Lamajak were tried to a jury. Frazin contended at trial that Lamajak had not pleaded res judicata and objected to any instruction about the defense being included in the jury charge. Lamajak responded that the defense was pleaded by virtue of the fact that its answer incorporated by reference Lamajak's motion for summary judgment based on res judicata. Lamajak nevertheless requested leave to file a trial amendment to its pleadings to add specifically the defense of res judicata. The trial court denied Lamajak's request and did not include an instruction on res judicata in the jury charge.

The jury returned a verdict in favor of Frazin on his claims for breach of contract, quantum meruit, and promissory estoppel. Frazin elected to recover on his breach of contract claim. The trial court signed a judgment awarding Frazin $4 million in damages together with attorney's fees of $1.6 million. The trial court also awarded Frazin pre-judgment interest in the amount of $1,508,383.10. Lamajak timely appealed to this Court.

## II.

In its first issue on appeal, Lamajak argues that Frazin's claims are barred by the doctrine of res judicata and the trial court erred in both refusing to allow the company to amend its pleadings to add the defense and failing to grant Lamajak's motion for judgment not withstanding the verdict based on res judicata. Because we conclude res judicata does not bar Frazin's claims against Lamajak, we do not reach Lamajak's arguments relating to its motion to amend its pleadings and its motion for judgment.

 To establish the defense of res judicata, a party must show (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). Res judicata prevents the relitigation of a claim or cause of action that has either been finally adjudicated or, with the use of diligence, should have been litigated in the earlier suit. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). Texas uses the "transactional" approach to determine what claims should have been litigated in an earlier suit. *Id.* at 631. Any cause of action that arises out of the same facts should, if practicable, be litigated in the same lawsuit. *Id.* at 630.

 Lamajak argues that the final judgment in favor of Cohen in the previous promissory note suit bars Frazin's claims against Lamajak based on the Beanie Baby agreement. Lamajak does not contend the claims against it in this suit were adjudicated in the promissory note suit. Lamajak contends instead that Frazin should have asserted his claims against the company as counterclaims in the note suit and, having failed to litigate his claims in that forum, Frazin is now barred from litigating them here.

In making this argument, Lamajak relies heavily on this Court's unreported memorandum opinion in *Frazin v. Cohen,* 2005 WL 1634913 (Tex.App.-Dallas 2005, pet. denied). In that opinion, we concluded that Frazin's claims in the severed portion of this case against Cohen individually for breach of contract, unjust enrichment, and fraud based on the alleged Beanie Baby agreement were barred by res judicata because those claims were "either raised in the [promissory note] lawsuit or were directly related to those claims." *Id.* at *2. Lamajak was not a party to either

the promissory note made the subject of the previous suit or the judgment in that suit, however. And, although the Beanie Baby agreement may have been related to Cohen's claims against Frazin based on the promissory note, this connection does not extend to Lamajak.

In this case, Frazin testified that his expected income from the Beanie Baby agreement formed at least part of the basis of Cohen's willingness to make the personal loan evidenced by the promissory note. Frazin also testified he believed he would be able to pay off the promissory note on time because of his expected income from the Beanie Baby agreement. Accordingly, as observed in *Frazin v. Cohen*, the Beanie Baby agreement and Cohen's actions in connection with it were related to Cohen's previous suit to recover on the promissory note. *Id.* In contrast, Lamajak was a complete stranger to the promissory note, and we see nothing in Cohen's suit on the note he owned and held individually that would have required Frazin to litigate his claims against Lamajak in that action. Therefore, we conclude the third element of res judicata is not met with respect to Frazin's claims against Lamajak and the doctrine does not bar those claims in this suit. We resolve Lamajak's first issue against it.

### III.

In its second through fifth issues, Lamajak challenges the sufficiency of the evidence to support a number of the jury's affirmative findings. More particularly, it contends there is both legally and factually insufficient evidence to support the jury's findings in favor of Frazin on his claims for breach of contract, promissory estoppel, quantum meruit, and attorney's fees. We address the issues separately.

■ Lamajak first contends there is no evidence or insufficient evidence to support the jury's finding of the existence of

an enforceable contract. The question presented to the jury included the following language:

Did Timothy Frazin and Lamajak, Inc. agree that in consideration for Timothy Frazin providing certain services to Lamajak in an effort to maximize Lamajak, Inc.'s profits from the sale of Beanie Babies and other Ty products during 1998, Lamajak, Inc. would pay Timothy Frazin all gross profits in excess of $6,000,000.00 which were earned by Lamajak, Inc. from the sale of Beanie Babies and other Ty products during 1998?

The jury answered this question "yes."

■ In determining whether there is legally sufficient evidence to support the jury's decision, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). To evaluate the factual sufficiency of the evidence supporting the finding, we consider all the evidence and will set aside the verdict only if the evidence supporting the jury finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985).

■ For an enforceable contract to exist, the legal obligations and liabilities of the parties must be sufficiently definite. *See Searcy v. DDA, Inc.,* 201 S.W.3d 319, 322 (Tex.App.-Dallas 2006, no pet.). The contract must be certain and clear as to all essential terms or the contract will fail for indefiniteness. *See Farone v. Bag'n Baggage, Ltd.,* 165 S.W.3d 795, 801 (Tex.App.-Eastland 2005, no pet.). Although Texas courts favor validating contracts, we may not create a contract where none exists. *Id.* at 802.

After reviewing the record on appeal, we conclude Frazin presented no evidence to show what his obligations and liabilities were under the alleged contract. Although Frazin and other witnesses testified at length about the work Frazin did after the contract was allegedly formed, there is no evidence that the parties agreed to what services Frazin would provide in return for his share of the gross profits. The only evidence relating to Frazin's obligations under the alleged agreement is his testimony that he told Cohen he had contacts and outlets and he could "help [Lamajak] do all this stuff." This vague offer of help is not specific enough to constitute any evidence of an enforceable contract. *See Charles E. Beard, Inc. v. McDonnell Douglas Corp.,* 939 F.2d 280, 283 (5th Cir.1991).

Frazin summarily suggests that his undisputed 1997 agreement to split his profits with Lamajak from the sale of a particular Beanie Baby established a course of dealing between the parties. Frazin makes no argument and cites no authority to support this statement, however. Furthermore, the 1997 agreement was materially different from the alleged contract at issue here and, by itself, does not establish a "course of business."

The services to be provided by Frazin were a material term of the alleged contract. Indeed, the trial court framed the question to the jury in terms of Frazin providing "certain services." Because there is no evidence to support the jury's finding that Frazin and Lamajak agreed on "certain services" to be provided by Frazin, the evidence is legally insufficient to support the jury's affirmative answer to the question of whether the parties made an agreement. Accordingly, Frazin's claim for breach of contract fails.

■■■■ Lamajak also challenges the legal and factual sufficiency of the evidence to support the jury's finding of promissory estoppel. Under the theory of promissory estoppel, a party that has failed to prove a legally sufficient contract, but has acted in reliance upon a promise to his detriment, may be compensated for his foreseeable, definite, and substantial reliance. *See Wheeler v. White,* 398 S.W.2d 93, 97 (Tex.1965). The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983). The damages recoverable under this theory are not the profits the promisee expected from acting in reliance on the promise, but the amount necessary to put the promisee in the position he would have been in if he had not so acted. *See E.F. Hutton & Co. v. Fox,* 518 S.W.2d 849, 853 (Tex.Civ. App.-Dallas 1974, writ ref'd n.r.e.). In other words, the injured party is entitled to "reliance damages."

The only evidence of reliance damages Frazin proffered at trial concerned the alleged lost profits of his wholly owned corporation resulting from his changed business strategy. Frazin testified that, in an attempt to maximize Lamajak's profits, he rapidly expanded his corporation's business by opening many new retail outlets for selling Beanie Babies. As a result, Frazin testified his corporation made little to no profits in 1998. According to Frazin, if he had continued operating the business the way he had in 1997, the corporation would have made profits averaging $150,000 per month.

■■■ It is well established that a corporate stockholder, even of a wholly owned corporation, cannot recover damages personally for a wrong done to the corporation even though he may be injured by that wrong. *See Wingate v. Hajdik,* 795 S.W.2d 717, 719 (Tex.1990). Accordingly, even if we were to conclude that Lamajak

could be held responsible for the diminished value of Frazin's corporation, Frazin could not recover personally for that injury. *See Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242, 250 (Tex.App.-Dallas 2005, no pet.). To recover reliance damages, Frazin was required to prove his personal expenditures or losses. Frazin did not provide any evidence to show how the changes he made to his corporation's business strategy affected his personal income or caused a loss to him personally. He presented no evidence of how corporate losses could be translated into personal losses. And Frazin presented no testimony about any out-of-pocket expenses or other costs he incurred personally in reliance on Cohen's alleged promise. We conclude, therefore, that there is no evidence to support the jury's verdict awarding Frazin damages for promissory estoppel.

 The final basis for liability against Lamajak found by the jury was quantum meruit. Lamajak argues there is no evidence or insufficient evidence to support the jury's verdict on either liability or damages under this claim. To recover under quantum meruit a claimant must prove that: (1) valuable services were rendered or materials furnished, (2) to the person sought to be charged, (3) which services or materials were accepted, used and enjoyed by that person, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff was expecting to be paid by him. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). Lamajak specifically challenges the sufficiency of Frazin's evidence to support the fourth element of his quantum meruit claim. We note that Lamajak generally states in its brief that there is no evidence to support any of the elements of quantum meruit. But Lamajak provides argument and authority only with respect to the fourth element. Our analysis is limited, therefore, to whether the evidence is sufficient with respect to the fourth element of quantum meruit.

Lamajak argues that because Frazin admitted he did not expect to receive any payment for his services if Lamajak's profits did not exceed $6 million, Frazin provided no evidence of any expectation of payment. Lamajak's argument equates an expectation of payment based upon certain conditions with the absence of any expectation of payment. Lamajak cites no authority to support this limitation on quantum meruit claims.

At trial, Frazin presented evidence that he communicated his expectation of payment from Lamajak if Lamajak's profits exceeded $6 million by the end of 1998. The evidence showed that Cohen was president and CEO of Lamajak. Frazin testified Cohen offered to pay him all of Lamajak's profits over $6 million and that he accepted the offer. Frazin aggressively expanded his company's capacity for receiving Beanie Babies from Lamajak, and he assisted Lamajak with its marketing of the Beanie Babies. Frazin also testified he frequently asked Cohen about the status of Lamajak's profits and whether the condition upon which he would be paid had been met. Furthermore, Frazin presented evidence that Lamajak eventually made over $10 million in profits during 1998, thus meeting the condition for payment. In January 1999, Frazin demanded payment, and Cohen told him Lamajak's profits had not yet been calculated. We conclude this evidence is sufficient to show that Lamajak was reasonably notified of Frazin's expectation of payment for the services he rendered the company and is sufficient to support the jury's finding that Lamajak "should have known that Timothy Frazin expected to be paid for his services."

 Lamajak also argues that the statute of limitations bars Frazin's ability to

recover under quantum meruit for all but the last two days of his alleged work for Lamajak in 1998. Lamajak contends that Frazin's claim for payment accrued as the services were performed and, because Frazin did not file suit until December 30, 2002, the four-year statute of limitations bars all claims for payment accruing before December 30, 1998. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). Lamajak's argument is without merit.

Frazin's services were not of such a nature that there was an implied condition of payment at certain intervals after which limitations would begin to run. *See Thomason v. Freberg* 588 S.W.2d 821, 828 (Tex.Civ.App.-Corpus Christi 1979, no writ). Indeed, the record is replete with testimony that Frazin did not expect to be paid until he had worked the entirety of 1998 and Lamajak's profits for that year had been calculated. Frazin's claim is based on Lamajak's failure to pay him after its profits for 1998 were determined. Thus, the earliest date his claim could have accrued is January 1, 1999. Because Frazin's claim for quantum meruit was based on a lump sum payment to be made on or after January 1, 1999, his entire claim for quantum meruit was timely filed on December 30, 2002.

 Additionally, Lamajak contends the evidence is insufficient to support the amount of quantum meruit damages awarded by the jury. The measure of damages for a quantum meruit claim is the reasonable value of the work performed and the materials furnished. *See M.J. Sheridan & Son Co., Inc, v. Seminole Pipeline Co.,* 731 S.W.2d 620, 625 (Tex. App.-Houston [1st Dist.] 1987, no writ). The jury has discretion to award damages within the range of evidence presented at trial. *See Gulf States Utilities Co., v. Low,* 79 S.W.3d 561, 566 (Tex.2002). Lamajak does not contend Frazin failed to offer

evidence on the value of his services. Instead, it contends the evidence offered by Frazin was not competent to support the amount of damages awarded.

Lamajak generally challenges the qualifications of the witnesses who provided testimony on the value of Frazin's services. This testimony came primarily from Frazin himself and another witness who worked in toy sales. Frazin testified he generally valued his services to Lamajak as being worth between $2 million and $5 million dollars. Frazin then testified the value of his services could be determined based upon any one of a variety of measurements, including a percentage of gross sales, a percentage of net sales, and a percentage of sales based on a graduated scale. Under some of those measurements, the value of Frazin's services would be between $1 million and $2 million. Although Lamajak challenges Frazin's qualifications as an expert, it cites no cases to show that expert testimony was necessary to prove the value of Frazin's services. We conclude Frazin's testimony was admissible as that of a lay witness. *See* TEX.R. EVID. 701.

To the extent Lamajak complains that Frazin's testimony was vague or "unreliable," it was within the province of the jury to determine the weight to be given to Frazin's testimony. *See Wilson,* 168 S.W.3d at 819. Having reviewed the record, we conclude Frazin's testimony was both legally and factually sufficient to support the jury's award of damages for quantum meruit. It is unnecessary, therefore, for us to address Lamajak's arguments concerning the admissibility and sufficiency of the other witness's testimony.

 Finally, Lamajak contends there is no evidence or insufficient evidence to support the award of attorney's fees. In contesting the attorney's fees, Lamajak first contends that if Frazin's contract

claim is not upheld, he necessarily cannot recover attorney's fees. But a person may recover reasonable attorney's fees if successful on a claim for quantum meruit. *See Gentry v. Squires Const., Inc.*, 188 S.W.3d 396, 406 (Tex.App.-Dallas 2006, no pet.). Because we have upheld the judgment on quantum meruit, Frazin may recover his attorney's fees.

■■■ Lamajak next lists the factors to be considered when determining a fee award and contends there is no evidence or insufficient evidence to support several of these factors.[1] Evidence of each of these factors, however, is not necessary to determine a fee award. *See Sandles v. Howerton*, 163 S.W.3d 829, 838 (Tex.App.-Dallas 2005, no pet.). At trial, Frazin's attorney testified about his experience as an attorney. He testified about his fee arrangement with Frazin and the work done on the case including discovery, preparing motions, and trial preparation. Pre-trial work included numerous depositions both in and out of state as well as hearings on discovery disputes and motions for summary judgment. Frazin's attorney also testified about the complexity of the legal issues involved and the usual and customary fees in the area. After examining the record, we conclude the evidence is both legally and factually sufficient to support the award of attorney's fees.

■■■ Lamajak also contends the award cannot stand because Frazin failed to segregate his attorney's fees to show which fees were attributable to claims for which fees were authorized. We note first that Frazin's theories of liability and the common facts relating to those theories may not have required segregation of the attorney's fees. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex.1991). We also note that, in the first instance, the trial court makes the legal determination of whether fees must be segregated. Here, the trial court necessarily determined segregation was not required because the charge it submitted to the jury only asked the jury to determine "a reasonable fee for the necessary services Timothy Frazin's attorneys provided in this cause." Lamajak did not object to the charge submitted. Having failed to object to the charge, Lamajak waived any error committed by the trial court in determining the fees did not need to be segregated and in failing to award only those fees attributable to claims for which attorney's fees were authorized.

## IV.

■■■ In its last issue, Lamajak contends the trial court erred in awarding prejudgment interest because it applied the wrong statute. The statute upon which the trial court relied to award prejudgment interest was section 302.002 of the Texas Finance Code. *See* TEX. FIN. CODE ANN. § 302.002 (Vernon 2006). Section 302.002 sets the amount of interest a creditor may charge an obligor if an amount is not otherwise agreed to and sets the date of accrual to allow interest to run at the 30th day after the date upon which

---

**1.** In determining the reasonableness of an award of attorney's fees, the factors to be considered are: (1) the time and labor involved, novelty and difficulty of the questions involved, and the skill required; (2) the likelihood that the lawyer will be precluded from accepting other employment; (3) the fee customarily charged for similar services; (4) the amount involved and results obtained; (5) time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and abilities of the lawyers performing the services; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997).

the amount is due. *See id.* A creditor under 302.002 is defined as a person who loans money or otherwise extends credit. *See* Tex. Fin.Code Ann. § 301.002 (Vernon 2006). An obligor is defined as a person to whom money is loaned or credit is otherwise extended. *See id.* The current definition of creditor specifically excludes a judgment creditor and the definition of obligor specifically excludes a judgment debtor. *See id.* In the case before us, Frazin cannot be considered a creditor nor can Lamajak be considered an obligor. *See Natural Gas Clearinghouse v. Midgard Energy Co.,* 113 S.W.3d 400, 413–14 (Tex.App.-Amarillo 2003, pet. denied).

Prejudgment interest in this case should have been awarded pursuant to section 304.104 of the Texas Finance Code. *See* Tex. Fin.Code Ann. § 304.104 (Vernon 2006). Under section 304.104, prejudgment interest in this case began to accrue 180 days after written notice of the claim was received on December 31, 2001. Because the trial court erred in applying the wrong statute to calculate prejudgment interest, we resolve this portion of Lamajak's final issue in its favor.

## V.

Based on the foregoing, we reverse the trial court's judgment in favor of Timothy Frazin on his claim for breach of contract and render judgment for Frazin on his claim for quantum meruit. We further reverse the trial court's judgment for prejudgment interest calculated under section 302.002 of the Texas Finance Code and render judgment for prejudgment interest based on section 304.104. We affirm the trial court's judgment with respect to attorney's fees.