**AFFIRM; Opinion Filed January 28, 2020**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01383-CV

### PMC CHASE, LLP AND STEVE TURNBOW, Appellants
### V.
### BRANCH STRUCTURAL SOLUTIONS, INC., Appellee

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-01773-E**

## MEMORANDUM OPINION

Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Carlyle

Construction contractor Branch Structural Solutions, Inc. (BSS) sued PMC Chase, LLP

and its manager, Steve Turnbow (collectively, appellants), seeking payment for work performed.

After a bench trial, the trial court found Mr. Turnbow personally liable for breach of contract and

PMC Chase liable in quantum meruit. The trial court signed a judgment awarding BSS $32,627.10

in damages and $23,860.00 in attorney's fees against Mr. Turnbow and PMC Chase, jointly and

severally.

In six issues on appeal, appellants challenge the sufficiency of the evidence regarding

damages and contend the trial court erred by (1) finding that Mr. Turnbow contracted for the work

in his personal capacity, (2) not limiting BSS to a quantum meruit recovery, and (3)"awarding

judgment for the same damages on both breach of contract and quantum meruit." We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

BSS is a "structural steel fabricator and erector." Its president is Kerry Branch. In October 2015, a mutual friend introduced Mr. Branch to Mr. Turnbow, who asked Mr. Branch to submit a proposal regarding a commercial construction project. On December 9, 2015, Mr. Turnbow signed a one-page document prepared by BSS (the contract). The contract stated "Attention: Steve Turnbow" and listed four items to be installed by BSS for a total price of $32,450.00: (1) "Columns and beams," (2) "1 set of dumpster gates with hardware," (3) "1 roof access ladder (No Safety Cage)," and (4) "RTU Frame." Mr. Turnbow also accepted a subsequent change order that included $677.10 in additional charges.

On December 21, 2015, BSS sent appellants an invoice for $33,127.10, with a January 20, 2016 "due date."[1] No payment was made. In April 2016, BSS filed this lawsuit against PMC Chase and Mr. Turnbow. BSS's petition asserted claims for breach of contract and quantum meruit, in the alternative, against both defendants based on work BSS performed. PMC Chase and Mr. Turnbow filed a joint breach of contract counterclaim, contending BSS failed to complete the work as agreed.

At trial, BSS abandoned its breach of contract claim against PMC Chase, stating "the contract was with just Mr. Turnbow individually." Appellants argued at trial that Mr. Turnbow was "just an agent" for PMC Chase and therefore was not personally liable on the contract. Mr. Turnbow testified:

> Q. So you agree that this is a legally binding contract?
> A. Yes.

---

[1] BSS sent the invoice to:
Steve Turnbow
PMC Chase LLP
2800 Park Dr., Suite #100
Arlington, TX 76015

–2–

Q. And that contract would have been signed by you individually; is that correct?
A. I was signing for my company.
Q. . . . Where on this document does it say that you're signing for your company?
A. It doesn't.
. . . .
Q. And is this document addressed to you and signed by you individually? Is that correct?
A. Yes.
Q. And nowhere on the document does it say that you're signing on behalf of PMC Chase?
A. No.

Mr. Branch testified,

Q. . . . When you contracted with—when this document was signed, did you know that Mr. Turnbow represented PMC Chase at that time?
A. Yes, sir.
Q. Okay. When he signed this document, did you believe he was signing—what was your understanding of how he was signing it?
A. He was an officer of the company and he was entering into an agreement.
. . . .
Q. . . . You—your understanding was that when he signed this he was personally guaranteeing that he was going to pay; is that correct?
A. Yes, sir.
Q. That was your understanding?
A. Yes.

As to damages, BSS acknowledged at trial that two contract items, the dumpster gates and roof access ladder, were never installed. Mr. Branch testified the installation of those two items accounted for about $500.00 of the contract price and was not completed because appellants did not supply the gates and ladder as required. According to Mr. Branch, BSS completed all other work under the contract, including installation of "[t]he columns and beams," "the RTU frame," and the additional items described in the change order. He stated that after the invoice was sent, he and Mr. Turnbow had "discussions" regarding "items needed to complete his roof structure," but that work was "different than what the original contract was for." Mr. Branch provided a price for that additional work, but no agreement was reached and BSS did not perform that work.

Mr. Branch testified BSS began working on the project "probably end of November, maybe" and his crew was on the job site "for several weeks." The size of his crew varied from

three to six workers, depending on that day's work. On cross-examination by appellants' counsel, Mr. Branch testified his "cost per worker" is "typically around $85 an hour per man" and his crew worked on the project "probably 10 hours a day" for "probably three weeks."

According to Mr. Turnbow, BSS began work several days after the contract was signed and worked a total of about five days. Mr. Turnbow testified the "RTU frame" was "partially completed," but BSS failed to complete rooftop "decking" he believed was required as part of that contract item. He "thought that the amount that [BSS] was asking for was not correct with what was done" and paid BSS nothing. He stated he (1) subsequently paid other contractors $11,500.00 to complete the contract work and (2) believes the value of the work BSS completed is "around $15,000," "based on what it took to complete it."

The trial court's judgment stated (1) "[o]n the claim of Breach of Contract, the Court finds in favor of [BSS] and against Defendant Steve Turnbow, in the amount of $32,627.10"; (2) "[o]n the claim of Quantum Meruit, the Court finds in favor of [BSS] and against Defendant, PMC Chase, LLP, in the amount of $32,627.10"; and (3) "Steve Turnbow and PMC Chase, LLP are joint and severally liable for the judgment of $32,627.10 plus interest and for the attorney's fees in the amount of $23,860.00 plus interest." On appellants' request, the trial court also filed findings of fact and conclusions of law.[2]

---

[2] The trial court's findings of fact and conclusions of law stated:

Findings of Fact

A. Plaintiff entered into a signed contract with Steve Turnbow on December 9, 2015.
B. The Contract was to supply labor and equipment . . . for a building being built for PMC Chase LLP.
C. Plaintiff completed the work with the exception of installing 1 set of dumpster gates with hardware and 1 roof access ladder.
D. PMC Chase LLP is owned by Steve Turnbow and the work done by Plaintiff directly benefited PMC Chase LLP as PMC Chase LLP owns the building that was being constructed.
E. Plaintiff was never paid for any of the work done by either Steve Turnbow or PMC Chase LLP.
. . . .

Conclusions of Law

A. Plaintiff complied with the terms of the contract with the exception of installing 1 set of dumpster doors and one roof access ladder.
B. Defendant, Steve Turnbow, breached the terms of the contract by failing to pay Plaintiff the money owed in the amount of $32,627.10.
C. Plaintiff provided Defendant, PMC Chase LLP, with valuable services by providing installing [sic] columns and beams and RTU Frame for the building owned by PMC Chase LLP.

Appellants filed a timely "Motion to Modify Judgment and/or for New Trial" in which they stated "[t]he [trial court] incorrectly found Defendant Turnbow had personal liability," "[t]he Plaintiff admitted in final argument that the corporate defendant PMC Chase LLP had no liability," and "[a]ttorney's fees should not be granted." That motion was overruled by operation of law.

**Standard of review**

We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings in a nonjury trial as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answers to jury questions. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Wright Grp. Architects–Planners, P.L.L.C. v Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.). In a legal sufficiency challenge, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id*. at 827. If the evidence would permit reasonable and fair-minded people to reach the finding under review, the legal sufficiency challenge fails. *Id*. In a factual sufficiency challenge, we consider all the evidence and will set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and manifestly unjust. *Id*. When one or more elements of a ground of recovery or defense have been found by the trial court, "omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." TEX. R. CIV. P. 299.

---

D. Plaintiff provided the labor and equipment for the benefit of PMC Chase LLP.

E. Defendant, PMC Chase LLP, knew or should have known Plaintiff expected to be compensated when PMC Chase accepted installation of columns and beams and RTU frame for the building owned by PMC Chase LLP.

F. Because Plaintiff expected compensation, PMC Chase LLP's acceptance of the installation of columns and beams and RTU frame without payment resulted in damages in the amount of $32,627.10.

G. Plaintiff is entitled to attorney's fees in the amount of $23,860.00 jointly and severally under Texas Civil Practice & Remedies Code chapter 38 for the breach of contract and the Quantum Meruit claim.

In a bench trial, the trial court, as fact-finder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Wright Grp.*, 343 S.W.3d at 199. When the evidence is conflicting, we must presume the fact-finder resolved the inconsistency in favor of the verdict if a reasonable person could do so. *City of Keller*, 168 S.W.3d at 821.

We review a trial court's conclusions of law de novo to determine whether the trial court drew the correct legal conclusions from the facts. *Wright Grp.*, 343 S.W.3d at 199; *Landerman v. State Bar of Tex.*, 247 S.W.3d 426, 431 (Tex. App.—Dallas 2008, pet. denied). We will uphold the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *Vill. of Sanger, Ltd. v. Interstate 35/Chisam Rd., L.P.*, No. 05-16-00366-CV, 2018 WL 703327, at *2 (Tex. App.—Dallas Feb. 5, 2018, no pet.) (mem. op.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

**Applicable law**

Generally, "a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam). This rule has been ameliorated in the law of building contracts by the doctrine of substantial performance, which allows a contract action by a builder who has breached, but nevertheless substantially completed, a building contract. *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 481 (Tex. 1984); *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 403 n.3 (Tex. App.—Dallas 2006, no pet.). The doctrine assumes that if there has been substantial performance, the breach is immaterial. *Gentry*, 188 S.W.3d at 403 n.3; *see also Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam) ("Generally, materiality is an issue to be determined by the trier of facts."). A contractor who substantially performs can sue and recover for breach of contract with the damages being the amount owed to the contractor under

the contract, less the cost of remedying any defects due to its errors or omissions. *Vance*, 677 S.W.2d at 482.

Quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received. *Gentry*, 188 S.W.3d at 402. Though recovery under quantum meruit is generally prohibited if an express contract covers the services or materials for which the claimant seeks recovery, exceptions apply regarding construction contracts. *Id*. at 402–03 (citing *Truly v. Austin*, 744 S.W.2d 934, 936–37 (Tex. 1988)). "A contractor may recover the reasonable value of the services rendered and accepted or the materials supplied under the theory of quantum meruit if: (1) the services rendered and accepted are not covered by the contract; (2) the contractor partially performed under the terms of an express contract, but was prohibited from completing the contract because of the owner's breach; or (3) the contractor breached but the owner accepted and retained the benefits of the contractor's partial performance." *Id*. at 403. The doctrine of substantial performance "will not normally prohibit the implementation of the theory of quantum meruit." *Id*.; *see also Montclair Corp. v. Earl N. Lightfoot Paving Co*., 417 S.W.2d 820, 830 (Tex. App.—Houston 1967, writ ref'd n.r.e.) (stating court's extensive research revealed no case law precluding construction contractor who substantially performs from electing to recover under quantum meruit rather than on contract). The measure of damages for a quantum meruit recovery is the reasonable value of the work performed and the materials furnished. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 733 (Tex. 2018). "Evidence of anticipated benefits of a contract, without more, will not support the recovery of damages for a quantum meruit claim." *Brandt Cos., LLC v. Beard Process Sols., Inc.*, No. 05-17-00780-CV, 2018 WL 4103210, at *13 (Tex. App.—Dallas Aug. 29, 2018, pet. granted, judgm't vacated w.r.m.) (mem. op.).

**Mr. Turnbow's personal contractual liability**

"It is well-settled that the law does not presume agency." *Wright Grp.*, 343 S.W.3d at 199. "When an agent seeks to avoid personal liability on a contract he signs, it is his duty to disclose that he is acting in a representative capacity and the identity of his principal." *Id.*; *accord Lassiter v. Rotogravure Comm., Inc.*, 727 S.W.2d 8, 11 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Uncommunicated intent will not suffice. *Lassiter*, 727 S.W.2d at 11 (citing *Seale v. Nichols*, 505 S.W.2d 251, 255 (Tex. 1974)).

We review construction of an unambiguous contract de novo. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). If a written contract unambiguously shows on its face that it is the obligation of the person who signed it, the signer may not introduce parol evidence to show that he intended to bind only his principal. *Wright Grp.*, 343 S.W.3d at 199; *Lassiter*, 727 S.W.2d at 9. "If the instrument is ambiguous, however, so that it is uncertain whether it is intended to bind the principal or agent, parol evidence of the circumstances attending its execution is admissible to show the real understanding." *Lassiter*, 727 S.W.2d at 9; *accord Wright Grp.*, 343 S.W.3d at 199. "[P]arol evidence of intent cannot be admitted for the purpose of creating an ambiguity." *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996). "Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract." *Id.*

We begin with appellants' third issue, in which they contend the trial court erred by finding Mr. Turnbow signed the contract in his personal capacity "because both parties to the contract testified that they understood Turnbow to have signed the contract for PMC Chase." The contract, which neither side contends is ambiguous, bears Mr. Turnbow's signature and does not mention PMC Chase or indicate representative capacity in any way. Thus, on its face, the contract

unambiguously shows it is the obligation of Mr. Turnbow personally. *See Wright Grp.*, 343 S.W.3d at 199; *Lassiter*, 727 S.W.2d at 9.

Appellants contend "there is an important exception to [the parol evidence rule] that is applicable to this case: 'Language used by parties in a contract should be accorded its plain, grammatical meaning ***unless it definitely appears that the intention of the parties would thereby be defeated***.' *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985)." According to appellants, "although the contract does not expressly state that Turnbow was signing for PMC, this is a case where it definitely appears that the agreed intention of the parties would be defeated by construing the contract in any other way." But appellants' cited authority, *Lyons*, did not allow extrinsic evidence for the purpose of considering whether the parties' intention would be defeated. *See Lyons*, 701 S.W.2d at 643. Appellants' position that *Lyons* should be construed to allow consideration of extrinsic evidence for that purpose here conflicts with well-established case law. *See Friendswood*, 926 S.W.2d at 283 ("Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract."); *Wright Grp.*, 343 S.W.3d at 199 ("If the contract clearly shows on its face that it is the obligation of the person who signed it, parol evidence is inadmissible to show that the person intended only to bind his principal."). The trial court did not err by concluding Mr. Turnbow was personally liable on the contract. *See Wright Grp.*, 343 S.W.3d at 199.

**Evidentiary sufficiency regarding damages**

In their fifth and sixth issues, appellants contend there is "no evidence or insufficient evidence" to support the amount of damages awarded for breach of contract and quantum meruit, "as it relies on the wrong measure of damages" for those causes of action. According to appellants, (1) "the trial court's finding that 'plaintiff completed the work with the exception of installing 1 set of dumpster gates with hardware and 1 roof access ladder' is contrary to the undisputed

evidence to the extent that it omits BSS's failure to complete the decking for the RTU (rooftop unit), which Branch admitted was within the scope of the contract"; (2) "the evidence of contract damages is factually insufficient" because the trial court failed to subtract PMC Chase's "uncontroverted" damages of $11,500.00 from BSS's contract damages; and (3) Mr. Branch "testified only to the contract price," "which numerous courts have held constitutes legally insufficient evidence of damages under quantum meruit."

In support of their contention that Mr. Branch "admitted" he failed to complete "decking" that was within the contract's scope, appellants cite Mr. Branch's testimony on cross-examination:

Q. And, also, what about the decking for that? Would that also be beyond the scope—
A. The deck?
Q. —of the original work?
A. Yeah. We would have—we would have included it if we would have had it. If the framing would have been up, we would have decked it.
Q. Okay. But this part right here you didn't—you didn't deck up—
A. It wasn't up when we were decking.
Q. —did you?
A. Yeah. It wasn't there.
Q. But you could've?
A. There was nothing there.
Q. Nothing there to deck. Okay. So you really didn't finish the decking, right?
A. The—yeah. If you want to say we didn't finish the decking, yes, I agree.

In that testimony, Mr. Branch agreed BSS did not "finish the decking," but also stated it was beyond the scope of the original work. Following that testimony, Mr. Branch stated on redirect examination,

Q. You were just asked if all the decking was done; is that right? And you said no; is that correct?
A. Correct.
. . . .
Q. All of the decking that was done on the scope of work was completed, though?
A. Yes, sir.

Mr. Branch also testified BSS completed all work under the contract except installation of the ladder and dumpster gates and those two items accounted for about $500.00 of the contract

price. We disagree with appellants' contention that "undisputed" evidence contradicts the trial court's finding that "Plaintiff completed the work with the exception of installing 1 set of dumpster gates with hardware and 1 roof access ladder" or required the trial court to subtract $11,500.00 from BSS's contract damages. As the sole judge of the credibility of the witnesses, the trial court reasonably could have found that BSS substantially performed under the contract and $500.00 was the proper cost of remedying any defects due to BSS's errors or omissions. *See Wright Grp.*, 343 S.W.3d at 199; *see also City of Keller*, 168 S.W.3d at 821; *Vance*, 677 S.W.2d at 482. The record contains evidence that would permit reasonable and fair-minded people to reach the amount of contract damages awarded and does not show the evidence supporting that amount is so weak or so against the overwhelming weight of the evidence that it is clearly wrong and manifestly unjust.

As to quantum meruit, the record does not support appellants' contention that Mr. Branch "testified only to the contract price." Mr. Branch testified the size of his crew varied from three to six workers, his "cost per worker" is "typically around $85 an hour per man," and his crew worked on the project "probably 10 hours a day" for "probably three weeks." That testimony was elicited by appellants' counsel and used in appellants' own $15,000.00 calculation of the value of BSS's completed work. We conclude that testimony was legally and factually sufficient to support the quantum meruit damages awarded. *See Hill*, 544 S.W.3d at 733; *see also Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 796 (Tex. App.—Dallas 2007, no pet.) (concluding plaintiff's testimony as lay witness was legally and factually sufficient to support value of his services as being between $2 million and $5 million for quantum meruit purposes and jury was entitled to determine precise amount within that range); *Spears v. Huber*, No. 07-11-0193-CV, 2012 WL 933780, at *1 (Tex. App.—Amarillo Mar. 20, 2012, no pet.) (mem. op.) (concluding that because both parties used same rates "to make their own calculations of what was due" on quantum meruit claim, court would "assume" those rates "reflect the reasonable value of [plaintiff's] services").

**Liability theories applied by trial court**

In their fourth issue, appellants contend "[t]he trial court erred in awarding judgment for breach of contract because Finding of Fact 'C' establishes BSS's prior breach of contract by failing to complete the work it contracted to do." Although Finding of Fact "C" stated BSS failed to install "1 set of dumpster gates with hardware and 1 roof access ladder," the record shows the trial court, by awarding BSS breach of contract damages in the amount owed under the contract minus the cost of remedying the defect, impliedly determined that omission to be immaterial. *See Gentry*, 188 S.W.3d at 403 n.3; TEX. R. CIV. P. 299. Thus, under the doctrine of substantial performance, BSS was entitled to sue and recover for breach of contract with the damages being the amount owed to it under the contract, less the cost of remedying any defects due to its errors or omissions. *See Vance*, 677 S.W.2d at 482.

In their appellate reply brief, appellants contend "no implied finding [as to the materiality of BSS's breach] can be made either way, because a finding that the breach was not material is required for a contract claim and a finding it was material is required for a quantum meruit claim." According to appellants, (1) "the trial court's contradictory judgment for both breach of contract and quantum meruit presumes that the breach was both material and non-material" and (2) "[t]he inability to resolve this issue on appeal should require remand of the entire case, because it is central to determining the proper cause of action." We disagree. Appellants cite no authority for their position that a material breach is required in order to pursue quantum meruit relief under the established construction contractor exceptions described above, and we have found none. The doctrine of substantial performance "will not normally prohibit the implementation of the theory of quantum meruit." *Gentry*, 188 S.W.3d at 403; *see also Montclair Corp.*, 417 S.W.2d at 830. We conclude that an implied finding of an immaterial breach by BSS is supportive of both theories in this case and does not render the trial court's judgment "contradictory."

–12–

Next, we turn to appellants' second issue, in which they assert "[r]ecovery in quantum meruit is the only permitted option where the plaintiff fails to complete its contract." As explained in our analysis above, the trial court properly concluded that, under the doctrine of substantial performance, BSS was entitled to sue and recover for breach of contract damages. We disagree that quantum meruit was BSS's "only permitted option." *See Gentry*, 188 S.W.3d at 403.

Finally, we address appellants' first issue, in which they contend "[t]he trial court erred in awarding judgment for the same damages on both breach of contract and quantum meruit, because the law is clear that there can be no recovery under quantum meruit where the same transaction is covered by a valid contract." Appellants also argue "the trial court erred in concluding that BSS could recover for both breach of contract and quantum meruit simultaneously" and "[t]his Court must decide the one proper theory, the one proper defendant, and the one proper remedy."

"[T]he trial court's judgment must award the prevailing party all the relief to which he may be entitled." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (citing Tex. R. Civ. P. 301). A party may seek damages based on alternative theories, but it is not entitled to a double recovery. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam); *E.F. Johnson Co. v. Infinity Glob. Tech.*, No. 05-14-01209-CV, 2016 WL 4254496, at *14 (Tex. App.—Dallas Aug. 11, 2016, no pet.) (mem. op.). When a party obtains favorable findings on alternate theories, it is entitled to judgment on the theory that provides the greatest or most favorable relief. *E.F. Johnson*, 2016 WL 4254496, at *14. When the prevailing party fails to elect between alternative measures of damages, the trial court should utilize the findings affording the greater recovery and render judgment accordingly. *Id.*; *see also Boyce Iron Works*, 747 S.W.2d at 787 (stating that if judgment is reversed on appeal, losing party can seek to recover instead on alternative theory upon which party prevailed at trial). An objection regarding failure to elect a remedy must be asserted in the trial court to preserve that complaint for

appellate review. *See Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 805 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

As we explained above, appellants' position that "there can be no recovery under quantum meruit where the same transaction is covered by a valid contract" is contrary to established construction contract law. *See Gentry*, 188 S.W.3d at 402–03. Here, BSS properly obtained favorable findings on the alternate theories of breach of contract and quantum meruit and thus was entitled to judgment on the theory providing the greatest or most favorable relief. *E.F. Johnson*, 2016 WL 4254496, at *14. Though appellants' argument on this issue also complains of failure to elect a remedy, such a complaint must be preserved for appeal by objection in the trial court. *See Jang Won Cho*, 572 S.W.3d at 805; *see also Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 145 (Tex. App.—Dallas 2006, no pet.) ("Once the trial court rendered a judgment on the verdict that Dal-Chrome was not entirely happy with, Dal-Chrome was required to present its complaints about the actual judgment rendered to the trial court and obtain a ruling."); TEX. R. APP. P. 33.1. The record does not show appellants raised that complaint in the trial court. Consequently, appellants' first issue presents nothing for this court's review.[3]

We decide appellants' six issues against them and affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

181383F.P05

---

[3] We also note that appellants do not address, and the record does not show, how the complained-of error harms them. *See* TEX. R. APP. P. 44.1. In our analysis above, we reject appellants' evidentiary sufficiency challenges regarding both recovery theories. Though the trial court found liability on both theories, the judgment makes appellants jointly and severally liable for "the judgment of $32,627.10 plus interest and for the attorney's fees in the amount of $23,860.00 plus interest," and thus precludes a double recovery. *See Waite Hill*, 959 S.W.2d at 184; *see also Green Oaks, Ltd. v. Cannan*, 749 S.W.2d 128, 131 (Tex. App.—San Antonio 1987, writ denied) ("The sole purpose of the doctrine of election of remedies is to prevent double recovery for a single wrong.").



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

PMC CHASE, LLP AND STEVE
TURNBOW, Appellants

No. 05-18-01383-CV     V.

BRANCH STRUCTURAL SOLUTIONS,
INC., Appellee

On Appeal from the County Court at Law
No. 5, Dallas County, Texas
Trial Court Cause No. CC-16-01773-E.
Opinion delivered by Justice Carlyle.
Justices Myers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Branch Structural Solutions, Inc. recover its costs of this appeal from appellants PMC Chase, LLP and Steve Turnbow.

Judgment entered this 28th day of January, 2020.