**Affirm and Opinion Filed July 31, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00446-CV**

**GENERAL CAPITAL GROUP BETELIGUNGSBERATUNG GMBH, Appellant**
**V.**
**AT&T, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-12856**

## OPINION

Before Justices Bridges and FitzGerald[1]
Opinion by Justice FitzGerald

This case arises from an alleged oral contract General Capital Group ("GC") claims to have had with AT&T ("ATT"). GC now appeals a summary judgment granted in favor of ATT. In two issues, GC asserts the trial court erred in granting summary judgment on its fraud claim and on its claim for quantum meruit. Concluding GC's arguments are without merit, we affirm the trial court's judgment.

## BACKGROUND

GC is a German investment firm with extensive contacts and experience in the telecommunications industry. The seeds for the dispute were sown when GC approached ATT

---

[1] The Honorable Mary L. Murphy was on the panel and participated in the submission of this case. Due to her resignation from this Court on June 7, 2013, she did not participate in the issuance of this Opinion.

asserting that it could broker the acquisition of T-Mobile ("TM") by ATT. GC made this proposal to ATT during a January 2009 telephone conference. GC claims that during this conversation, ATT agreed to allow GC to broker the TM deal and promised to pay it $780 million (2% of the $39 billion deal) on a contingent, success-fee basis. Thus, GC was to receive compensation only if ATT was successful in acquiring TM. There was no written agreement, or even a follow up email.

GC provided ATT with more written materials, and in May 2009, held a second conference with ATT. ATT indicated it was not likely to proceed within the following months of 2009 and that it would contact GC when it was ready to proceed.

From May 2009 to May 2011, there was no communication between ATT and GC. In March 2011, ATT announced that it intended to acquire TM. When GC approached ATT, ATT denied that they had any agreement. Shortly thereafter, GC sued ATT for breach of contract.

In response to GC's suit, ATT filed a plea to the jurisdiction, or alternatively, plea in abatement, arguing GC's claims were not ripe because they were contingent upon a successful closing of the deal. The trial court abated the case for 120 days or until such time as the transaction closed or was definitively abandoned.

Later, ATT announced that it had abandoned its bid for TM due to opposition from the Department of Justice and the FCC. The abatement of this case was lifted, and ATT filed a traditional motion for summary judgment on GC's claims. ATT asserted that GC had no right to recover on any of its claims because ATT did not successfully acquire TM.

After ATT filed its summary judgment motion, GC filed a fifth amended petition that abandoned all claims except the claims for quantum meruit and fraud. In addition, since the TM transaction did not successfully close, GC no longer argued that it was entitled to recover a $780 million success fee. Instead, it claimed it was entitled to recover "the reasonable value of its

services" in the amount of $30 million. GC filed a response to the summary judgment, and then ATT and GC both filed a reply and sur-reply, respectively. The trial court granted ATT's motion and entered a take-nothing judgment against GC. It is from this judgment that GC now appeals.

## ANALYSIS

### Standard of Review

ATT moved for a traditional summary judgment. *See* TEX. R. CIV. P. 166a(c). In a traditional summary judgment, the party moving for summary judgment has the burden to establish that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant satisfies its burden, the burden shifts to the nonmovant to preclude summary judgment by presenting evidence that raises a genuine issue of material fact. *Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied).

We review the trial court's summary judgment decision de novo. *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In doing so, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548–49.

### Fraud

In its first issue, GC contends the trial court erred in granting summary judgment on its claim against ATT for fraud. ATT responds that GC's own pleadings affirmatively negate at least one of the elements of its cause of action. We agree with ATT.

The elements of common law fraud are "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the

speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). Thus, recovery for fraud requires proof that the defendant's alleged false representation caused the plaintiff injury. *Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Proof of causation includes proof that the defendant's wrongful conduct was a substantial factor "in bringing about an injury which would not otherwise have occurred." *Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W.3d 602, 618 (Tex. App. —Dallas 2006), *rev'd in part on other grounds,* 314 S.W.3d 913 (Tex. 2010). Proof that the conduct was a substantial factor in bringing about the injury must be established "beyond mere conjecture, guess, or speculation." *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 781 (Tex. App. —Houston [1st Dist.] 2009, pet. denied).

GC contends ATT committed fraud by denying the existence of a contract. ATT denies that there was ever a contract. Nonetheless, ATT argues that even if we assume (1) ATT told GC it would pay it a 2% contingency fee if ATT acquired TM, and (2) ATT never intended to pay GC when it made the promise to do so, GC still has not been damaged because it is in the same position it would have been if the representation had been true. In other words, regardless of whether ATT promised to pay a 2% success fee and GC expended $30 million working on behalf of the acquisition, GC would still recover nothing because there was no "success" — ATT did not acquire TM. Therefore, even if ATT's representation was false, it did not cause any injury to GC.

GC's pleadings and summary judgment evidence establish that its claimed losses could not have been caused by ATT's alleged representation. In the fifth amended petition, GC claims it is entitled to recover out-of-pocket expenses for the work it performed to facilitate the TM

acquisition. Specifically, GC states, "[b]ased upon [ATT's] announcement and representation that it is no longer pursuing any acquisition of T-Mobile, [GC] limits its actual damages claim to its out-of-pocket or reliance damages."

In response to ATT's motion for summary judgment, GC submitted affidavits of company representatives Phillip Schoeller, Christoph Bulfon, Walter Raizner, and Ralph Seraphim. While the affidavits state that GC engaged in substantial activity to assure that TM would be available for an acquisition, they also all affirm that payment for GC's services was to be contingent upon a successful transaction.[2] It is undisputed that the transaction was not successful — ATT did not acquire TM.

GC argues that its damages must be measured at the time the alleged fraud occurred, not years later. According to GC, when ATT committed the alleged fraud in 2009, it caused GC to expend $30 million in out-of-pocket damages. GC further contends that, measured at the time of the fraud, GC's interest had a real market value. In support of its argument, GC relies on *Carlton Energy Group v. Phillips*, 369 S.W.3d 433, 454 (Tex. App.—Houston [1st Dist.] 2012, pet. granted). Specifically, GC claims *Carlton* stands for the proposition that a contingent interest in a transaction may have a market value, and the loss of that value is a compensable interest in tort. We view *Carlton*, however, as distinguishable from the instant case.

*Carlton* is a tortious interference case involving an investor in a natural gas project who contracted with the project owner to provide financing in exchange for a 38% interest in the project. *Id.* at 438. The owner of the project subsequently breached its contract with the investor and entered into an agreement with a group of companies that had approached the owner in an attempt to remove the investor from the project. *Id.* at 439–40. The companies were ultimately

---

[2] The affidavits do not describe what constitutes "substantial activity." Instead, the affidavits contain a conclusory statement that "the reasonable value of the services provided . . . would have been at least $30 million . . . ."

found liable for tortious interference with the investor's contract, and a jury awarded $31.16 million in actual damages. *Id*. at 441.

On appeal, the companies argued the evidence was insufficient to support the jury's determination that the fair market value of the investor's interest was $31.16 million. *Id*. at 477. Thus the focus was not whether the interest had value; rather, the argument pertained to how the value was measured and whether the evidence was legally and factually sufficient to support the jury's damage award. In its examination of the sufficiency of the evidence, the court noted that the loss of the investor's 38% interest in the project was measured at the time of the tortious interference, and the interest was an asset that had market value at the time it was taken. *Id*. at 454. The court further noted that one of the experts had testified that the project was "viable," and it is common for interests in ventures such as the gas project to be bought and sold before there is any production. *Id*. After considering all of the evidence, the court concluded that the investor was entitled to recover the fair market value of its interest at the time of the tortious interference, and was not required to prove any "lost profits." *Id*. at 454–55.

Conversely, the instant case involves allegations of fraud, not tortious interference. And the purchase of an interest in a gas project in exchange for financing differs significantly from a contract in which payment is contingent upon the successful completion of an acquisition. Moreover, in *Carlton*, the investor lost the value of the interest in the project because of the interferers' tortious conduct, not because the project never came to fruition. Indeed, there was no evidence in *Carlton* that something prevented the owner from drilling in the gas fields or that the gas fields were dry. Here, even if we characterize GC's expenditures as an "interest" in the TM deal, GC was only to recover the value of that interest if the acquisition actually occurred. *Carlton* is also distinguishable because it involved benefit-of-the bargain damages rather than the

out-of-pocket losses GC claims to have incurred in this case. In short, *Carlton* adds nothing to our analysis.

Because the evidence and GC's pleadings establish that the alleged conduct of ATT did not cause GC to suffer any damages, the trial court properly granted summary judgment in favor of ATT on GC's fraud claim. *See Hartford*, 287 S.W.3d at 781 (requiring proof that conduct was substantial factor in causing injury). GC's first issue is overruled.

**Quantum Meruit**

In its second issue, GC argues the trial court erred in granting summary judgment for ATT on GC's claim for quantum meruit. ATT responds that GC's own allegations defeat the claim.

Recovery in quantum meruit requires proof that services were performed under circumstances reasonably notifying the defendant that the plaintiff expected to be paid. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). An essential element of any claim for recovery in quantum meruit is that the plaintiff must expect to be compensated for the services rendered. *Id*.; *Smith v. Deneve*, 285 S.W.3d 904, 915-16 (Tex. App.—Dallas 2009, no pet.); *Richter v. Wagner Oil Co*., 90 S.W.3d 890, 895-96 (Tex. App.—San Antonio 2002, no pet.); *West Teleservices, Inc. v. Carney*, 75 S.W.3d 455, 462 (Tex. App.—San Antonio 2001, no pet.). The defendant must have the same expectation. *Vortt Exploration*, 787 S.W.2d at 944; *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

As set forth previously, GC's summary judgment evidence conclusively established that it did not expect to be paid unless ATT acquired TM. For example, one of the affidavits GC submitted as summary judgment evidence states, in pertinent part:

> [GC] believed that a deal had been reached regarding compensation in the January 2009 teleconference . . . all parties were aware that [GC] was not being paid on an hourly basis for its work as it proceeded, but rather would be paid on a success fee basis for enabling an acquisition agreement of [TM] by [ATT] . . . [GC] demanded to be paid a success fee basis, but would have accepted to be paid on an on-going basis . . .[ATT] knew that if it would not commit to a success based fee then [GC] would have to be paid on an on-going basis. Had an agreement as to payment not been in place [GC] would have terminated all contact with ATT just as it had done with [others] . . . .

GC insists there is no authority that the expectation of a contingent fee amounts to no expectation of payment at all. In support of this argument, GC relies on *Lamajak v. Frazin*, 230 S.W.3d 786, 796 (Tex. App.—Dallas 2007, no pet.). GC's reliance is misplaced because *Lamajak* is distinguishable from the instant case.

*Lamajak* involved an alleged oral agreement for the plaintiff to receive payment for services if the defendant company's profits for the year 1998 exceeded $6 million. The evidence showed that the company made over $10 million in profits during the year in question, "thus meeting the condition for payment." *Id*. at 795. Therefore, quantum meruit was a viable claim. The court also concluded that the company's statute of limitations defense had no merit because the claim for quantum meruit did not accrue until the contingency had been met. *Id.* at 796. Thus, unlike this case, *Lamajak* involved a contingency that was actually fulfilled.

The summary judgment evidence establishes that GC did not expect to be paid and ATT did not expect to pay unless and until the acquisition of TM was actually consummated. The transaction never occurred. Thus, there was no expectation of payment and therefore no basis for GC to recover in quantum meruit. The trial court properly granted summary judgment in favor of ATT on this claim. GC's second issue is overruled.

Having resolved all of GC's issues against it, we affirm the trial court's judgment.

<span style="float:right">/Kerry P. FitzGerald/</span>

KERRY P. FITZGERALD
120446F.P05                                    JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GENERAL CAPITAL GROUP
BETELIGUNGSBERATUNG GMBH,
Appellant

No. 05-12-00446-CV　　V.

AT&T, Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-12856.
Opinion delivered by Justice FitzGerald.
Justices Bridges and Murphy participating.

　　　In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.
　　　It is **ORDERED** that appellee AT&T recover its costs of this appeal from appellant
GENERAL CAPITAL GROUP BETELIGUNGSBERATUNG GMBH.

Judgment entered July 31, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE