**Reversed and Remanded and Opinion Filed June 4, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01670-CV

### D&J REAL ESTATE SERVICES, INC. D/B/A RE/MAX PREMIER GROUP AND STELLA BITNER, Appellants
### V.
### GREG L. PERKINS AND JESSICA J. PERKINS, Appellees

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-00559-2011**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Bridges

D&J Real Estate Services, Inc. d/b/a Re/Max Premier Group and Stella Bitner (Bitner) appeal the trial court's judgment, entered following a jury trial, in favor of Greg L. Perkins and Jessica J. Perkins on the Perkinses' claims arising out of the underlying real estate transaction. In three issues, Bitner argues the evidence is insufficient to support the jury's findings of fraud, statutory fraud, negligent misrepresentation, negligence, and breach of fiduciary duty; the jury's findings are in fatal conflict with its failure to find a DTPA violation; and the trial court improperly admitted certain expert testimony. We reverse the trial court's judgment and render judgment that the Perkinses take nothing on their claims.

Bitner represented the Perkinses pursuant to a buyer's representation agreement when the Perkinses began searching for a home to purchase. The Perkinses located a home in Anna,

Texas, and worked with Bitner to proceed with the purchase of the home. The purchase contract provided a ten-day option period "to examine the property and walk away from the contract." Following an inspection of the property, the inspector recommended a further inspection by a mold inspection specialist. Bitner prepared a proposed repair amendment to the contract which included, among other things, an item entitled "Have professional Mold inspection conducted at property due to previous water damage that has caused discoloration and water stains at garage ceiling above water heater area." Bitner submitted the amendment to the seller, who drew a line through several items, including the mold inspection item. Via email, Jessica asked Bitner what the lines meant. Bitner talked to the seller's agent, who indicated "those were things that [the seller] didn't want to do." Jessica said she needed to talk to Greg and "walk through the house and clarify what those were, because if [the seller] wasn't going to do those things, then we needed to do them ourselves or make a decision that they weren't going to be done and they were going to be our responsibility after buying the home."

Greg met with the seller at the house and walked through the house and identified "different things from the list." Greg knew the seller "wasn't obligated to do everything that we asked" and "there were options for [the seller] to accept all the repairs and perform them, reject them all, offer some amount of money instead of repairs, or to do some and not do some." The seller "pointed out the petri dish on the kitchen counter and the one in the upstairs bathroom and he told [Greg] I decided to do this mold test and we will get you those results." When Greg saw the seller was doing a mold test, Greg thought "this is something [the seller] decided to do to take upon himself for us to do so that we would be assured that there was no mold in the house." Greg was aware Bitner "showed up at some point" while he was meeting with the seller, but Greg was not sure when. According to Greg, Bitner did not walk through the house with him and the seller and "pretty much stayed in the kitchen." Bitner told Greg "that mold test would be

sufficient and we could move forward." Jessica arrived at the house after the seller left and "only stayed in the kitchen." Jessica saw "the petri dish thing" but did not know what it was called. She asked about the petri dish, and Greg and Bitner told her it was "the mold test that is being conducted."

Following the walkthrough, Bitner emailed Greg and Jessica and informed them the ten day option period expired the next day. The email requested that, if Greg and Jessica "agree[d] with the repairs Seller [was] willing to make at the home," they would initial next to the seller's initials. The email stated, "This indicates you agree with what Seller has elected to repair and/or replace." Greg and Jessica initialed each line of the amendment, including the crossed-out line regarding a mold test. A week after the ten day option period expired, Bitner emailed the seller and asked for an update on the agreed-upon repairs. Among other things, Bitner asked "What did the mold testing you were conducting at the property reveal? What are the results?" The seller emailed a partial response and, in a separate email, responded, "I forgot to mention that the mold test never produced any mold growth." Bitner forwarded this response to Greg and Jessica. Before closing, Greg and Jessica signed a form indicating the property had been inspected, they had reviewed the inspection report, and they had walked through and reviewed the property before closing. The form contained the following notice:

> NOTICE TO BUYER: The brokers have no knowledge of any defects in the Property other than what has been disclosed in the Seller's Disclosure Notice or other written information the brokers may have provided. The brokers have no duty to inspect the property for unknown defects. It is the Buyer's responsibility to have inspections completed.

At the closing, the seller and the seller's agent were not present. Greg and Jessica did not receive receipts and documentation of the mold test Bitner had promised them. They "were reassured by [Bitner] it was okay, it was not anything to worry about, and she was going to get

all of that stuff for us the next day and we should proceed with the closing." However, Bitner never provided the promised documents.

Shortly after moving into the house, The Perkinses' discovered "there was mold everywhere" in the house. The Perkinses eventually filed suit against the seller, Bitner, and others but settled with all parties except Bitner. The case proceeded to a trial before a jury on the Perkinses' claims against Bitner alleging violations of the DTPA, statutory fraud, common law fraud, negligence, negligent misrepresentation, and breach of fiduciary duty. The jury found Bitner committed no violation of the DTPA but found her liable under every other theory asserted by the Perkinses. This appeal followed.

We first address the Perkinses' first issue on cross-appeal in which they argue the trial court erred in entering an amended judgment on December 3, 2013, because the trial court's plenary power expired on October 4, 2013. The record shows a jury entered a verdict in favor of the Perkinses on July 12, 2013. On July 22, the Perkinses filed a motion for entry of judgment. On August 12, Bitner filed a motion for judgment notwithstanding the verdict arguing no judgment should be entered because of the jury's fatally conflicting findings. In the motion, Bitner repeatedly asserted that, if the Perkinses wanted to obtain judgment on their causes of action, their remedy was "a new trial." On August 30, the trial court entered its final judgment. On September 3, the trial court entered an order denying Bitner's motion for judgment notwithstanding the verdict. On September 17, the parties entered into a Rule 11 agreement that the Perkinses' counsel agreed to "rescind any execution on the Defendants['] property subject to Tex. R. Civ. P. 628 until the later of thirty (30) days from the date the final judgment was signed or thirty days from the date any motion for new trial is overruled as provided in Tex. R. Civ. P. 627." On September 27, Bitner filed both a motion to modify the trial court's judgment to reflect a $100,000 settlement credit and a motion for new trial. On November 7, the trial court denied

–4–

Bitner's motion for new trial. On December 3, the trial court entered an amended judgment reflecting a $100,000 settlement credit. This appeal and cross-appeal followed. The Perkinses argue Bitner's motion for judgment notwithstanding the verdict was actually a motion for new trial, and Bitner's second "motion for new trial" did not extend the appellate timetables. We disagree.

Bitner's motion for judgment notwithstanding the verdict sought to prevent entry of judgment following the Perkinses' motion for entry of judgment. At that time, the trial court had not yet entered its judgment, and Bitner argued a fatal conflict in the jury's findings precluded entry of judgment. The prayer asked the trial court to grant its motion for judgment notwithstanding the verdict and refuse to enter judgment in favor of the Perkinses. In the alternative, the motion sought a reduction in the amount of the judgment. Because "no judgment can be entered on theses causes of action," the motion stated, "a new trial must be ordered" if the Perkinses "wish to obtain a judgment in their favor on them." We conclude any reference to "new trial" did not convert Bitner's motion for judgment notwithstanding the verdict into a motion for new trial. The trial court, therefore, retained its plenary power to enter the December 3, 2013 amended judgment, and the parties' notices of appeal therefrom were timely. We overrule the Perkinses' first issue on cross-appeal.

In her first issue, Bitner argues the evidence is legally insufficient to support the jury's findings of fraud, statutory fraud, negligent misrepresentation, negligence, or breach of fiduciary duty. Because Bitner is attacking the legal sufficiency of the evidence on which she did not have the burden of proof, she must demonstrate that there is no evidence to support the adverse findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *EMC Mortg. Co. v. Jones*, 252 S.W.3d 857, 866 (Tex. App.—Dallas 2008, no pet.). In reviewing a no evidence challenge, we consider the evidence "in the light most favorable to the verdict, crediting favorable evidence if

reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *Jones*, 252 S.W.3d at 866. We are not permitted to weigh the evidence or make credibility determinations. *Jones*, 252 S.W.3d at 866. The jury's finding on an issue may be upheld on circumstantial evidence as long as it may fairly and reasonably be inferred from the facts. *Id.* If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Id.*

The elements of common law fraud are (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Gen. Capital Grp. Beteligungsberatung GMBH v. AT&T*, 407 S.W.3d 507, 510 (Tex. App.—Dallas 2013, pet. denied).

Statutory fraud in a transaction involving real estate or stock consists of: (1) a false representation of a past or existing material fact, when the false representation is made to a person for the purpose of inducing that person to enter into a contract and relied on by that person in entering into that contract or (2) a false promise to do an act, when the false promise is material, made with the intention of not fulfilling it, made to a person for the purpose of inducing that person to enter into a contract, and relied on by that person in entering into that contract. TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009).

The elements of negligent misrepresentation are: (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the

information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex.1999); *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex.App.—Dallas 2013, no pet.). To support a claim for negligent misrepresentation, the false information provided must concern an "existing fact." *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 237–38 (Tex.App.—Dallas 2012, no pet.).

The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).

Here, the repair addendum to the contract listed a professional mold test as one of the items proposed by the Perkinses. The seller crossed out this item and never consented to a professional mold test. Jessica said she needed to talk to Greg and "walk through the house and clarify" what items the seller refused to perform and "do them ourselves or make a decision that they weren't going to be done and they were going to be our responsibility after buying the home." Greg met with the seller at the house and the seller "pointed out the petri dish on the kitchen counter and the one in the upstairs bathroom and he told [Greg] I decided to do this mold test and we will get you those results." Bitner "pretty much stayed in the kitchen" while Greg walked through the house with the seller. Thus, Greg was aware the seller had undertaken the mold test, such as it was, on his own, and no "professional" mold test was forthcoming. The seller specifically drew a line through the professional mold test item on the repair addendum

and initialed it. Greg and Jessica both initialed the interlineation, indicating their knowledge and acceptance of the fact that no professional mold test would be performed. To the extent Bitner said the mold test the seller performed was "sufficient," the record contains no evidence to show Bitner knew the test was insufficient or invalid. Under these circumstances, we conclude the evidence is legally insufficient to show Bitner made a false representation for the purposes of common law fraud, statutory fraud, or negligent misrepresentation. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009); *Croucher*, 660 S.W.2d at 58; *AT&T*, 407 S.W.3d at 510; *Glenny*, 405 S.W.3d at 313. Further, in the absence of a false representation, we conclude the evidence is legally insufficient to show Bitner breached any duty and, therefore, the Perkinses negligence and breach of fiduciary duty claims must necessarily fail. *See Mason*, 143 S.W.3d at 798; *Blume*, 196 S.W.3d at 447. We sustain Bitner's first issue. Because of our disposition of this issue, we need not address the Perkinses' second issue on cross-appeal concerning a settlement credit in the trial court's December 3, 2013 amended final judgment.

We reverse the trial court's judgment and render judgment that the Perkinses take nothing on their claims.


131670F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

D&J REAL ESTATE SERVICES, INC.
D/B/A RE/MAX PREMIER GROUP AND
STELLA BITNER, Appellant

No. 05-13-01670-CV     V.

GREG L. PERKINS AND JESSICA J.
PERKINS, Appellee

On Appeal from the 429th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 429-00559-2011.
Opinion delivered by Justice Bridges.
Justices Fillmore and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for new trial.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered June 4, 2015.