

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00056-CV
_____

DAVID CANTU AND MICHELLE CANTU, Appellants

V.

SANDRA BRAVO AND JEAN GROSS, Appellees

On Appeal from the 57th District Court
Bexar County, Texas
Trial Court No. 2021-CI-21863

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

This is an appeal from an order dated May 8, 2023, in the 57th Judicial District Court in Bexar County[1] granting Jean Gross's and Sandra Bravo's separate no-evidence and traditional motions for summary judgment. On appeal, David and Michelle Cantu argue that the trial court erred by excluding their summary judgment evidence and by granting Gross's and Bravo's traditional and no-evidence summary judgment motions.

Because we find the trial court did not err in granting Gross's no-evidence motion for summary judgment but did err in granting both of Bravo's motions for summary judgment, we affirm as to Gross and reverse and remand as to Bravo.

## I.      Factual Background

### A.      Prior Contract and Knowledge of Roof Problems

The Cantus purchased a house in San Antonio from Bravo, and Gross was the listing agent for Bravo. Prior to contracting with the Cantus, Bravo contracted to sell the house to another individual. During those negotiations, it became apparent there were problems with the house's roof.

To correct the roof problems, Bravo and the prior contracted buyer considered three bids to the replace the roof: two for approximately $70,000.00 and one for $38,000.00 from roofer Mangold. As a part of Mangold's bid and after inspecting the roof, it gave a "professional

---

[1]Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We are unaware of any conflict between precedent of the Fourth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

opinion the roof need[ed] to be replaced." Knowing that recommendation, the prior contracted buyer required that the roof be replaced before closing. Ultimately, that sale did not go through.

After being made aware of the roof damage, Bravo filed an insurance claim for that damage. Her insurance company inspected the roof as a result of the claim and found that it had "pre-existing" roof tile damage and two leaks in the attic. Her insurance claim was denied.

**B.      Contract Negotiations Between Bravo and the Cantus**

After the first sale fell through, the Cantus became interested in the home in November 2020. On November 15, 2020, the Cantus offered $750,000.00. In the original offer, the Cantus provided that they accepted "the Property As Is" with no qualification for the roof damage. Bravo did not accept that offer, but Bravo did notify the Cantus' agent, through Gross, that the prior seller wanted a new roof. Through Gross, Bravo also notified the Cantus that there were three prior bids to replace the roof, with two being for $70,000.00.

On November 15, 2020, the Cantus also received the seller's disclosures for the property, including disclosures regarding the roof condition. In section 3 of the disclosures, Bravo stated that there were previous roof repairs: "Replaced about 10 Broken Roof Tiles with New Ones," "RE-SEAL[ED] AROUND SIDE FLASHING ABOVE FAMILY ROOM," and "[s]tained wood in attic replaced." Bravo also represented that "[r]epairs were done based on Inspection AmeriSpec[2] on July 30th, 2020. Refer to notes on inspection."

On November 17, 2020, and aware of the roof problem, the Cantus increased their original offer of $750,000.00 to $844,000.00 with the caveat that Bravo repair the roof: "Buyer

---

[2] AmeriSpec Home Inspection Services (AmeriSpec).

accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: Roof to be repaired according to homeowner, seller to provide a copy of the letter of opinion from the insurance company." Bravo agreed to those terms, and the contract was finalized on November 22, 2020.

On November 27, 2020, Gross communicated with the Cantus' agent that Bravo "realize[d] all roof issues [were] the most important for her [and the] buyer." The communication continued, "So far she has sent all your pictures to roof co. with a request to make all repairs." On November 29, 2020, the Cantus and Bravo entered into an amendment to the purchase contract. Under the terms of that amendment, repairs were "**to be completed by closing**" included the following: "ROOF COVERING MATERIALS - roof to be repaired per seller per [sic] and the 2 most recent inspection reports,[3] seller to provide copy of the letter of opinion from the insurance company."

## C.     Repairs to the Roof

After they agreed to the amendment, roof repairs began. Bravo hired Vortex Roofing (Vortex) to complete the repairs. On December 10, 2020, Vortex repaired some of the roof tiles and charged Bravo $800.00. In the report of those repairs, Vortex also represented the following: "The overall condition of this roof is structurally sound and solid. It is my expert opinion that this roof will continue to protect the dwelling without any breach of inclement weather penetration."

---

[3]The two "most recent inspection reports" were the report from AmeriSpec dated July 30, 2020, and the report from BPG-Scotts Inspections (BPG) dated November 24, 2020. Both of those reports reflected existing damage to the roof.

Six days later, on December 16, 2020, the Cantus directed their general inspector, BPG, to re-inspect the roof, and the following damages were noted:

> There are visibly damaged (Chipped or cracked) tiles. *(**Left Side, Front Central**)* Contact a qualified roofing contractor for appropriate repairs to all current damaged roof tiles.
> . . . .
>
> Noted evidence of past/present leakage of the roof: The roof decking is stained and in some cases damaged (Upper Attic) and in need of repair in one or more areas. ***The client(s) are urged to seek further evaluation of the roof and its components and/or estimates on all needed repairs by a qualified roofing contractor.***
> . . . .
>
> A visual inspection of the built-up roofing system at the ***Rear*** shows signs of blistering/air pockets. This condition is generally caused by trapped moisture/vapor within the various layers of the roofing material.
> . . . .
>
> Noted visible evidence of water ponding on the roofing surface. This condition can cause differential expansion/contraction, damage to structural integrity, and reduce life expectancy of the roof.
> . . . . *Without raining conditions, we are unable to determine if ponding will occur.*

Despite the references to those obvious problems, Bravo only forwarded parts of that report to Vortex. Thereafter, in a series of text message exchanges between Bravo and Mark Gonzales of Vortex, Bravo also directed Gonzales to do nothing: "They don't want us to do anything else." To reiterate her point, Bravo again stated in another text message: "They are not asking for anything done again." Gonzales complied, only completed a minor repair, and testified that he did not find "repairs or corrections" to the roof were necessary at that point because there were "no leaks."

5

On December 28, 2020, the day before closing, Gonzales sent another text message to Bravo, informing her that he had "fix[ed] that one area" and charged her $250.00 for "that little area."[4] Bravo communicated that correspondence to Gross, and Gross represented to the Cantu's agent by text message that the repairs to the roof had been completed: "Last roof repair per inspector was done last week." According to her affidavit, Gross sent the following text message based upon information received from Bravo: "Bravo informed me that the inspector informed her the repairs referenced had been done the week before."

On December 29, 2020, the next day, after being notified that the repairs were completed, the Cantus signed a "**BUYER'S WALK-THROUGH AND ACCEPTANCE FORM**" wherein the Cantus accepted the property "in its present condition." The Cantus also recognized "[t]he [p]roperty was inspected by an inspector or inspectors of Buyer's choice. Buyer has reviewed the inspection report(s)." The Cantus claim they signed the form "**based on the belief that all repairs required to be performed by seller had been completed.**" The Cantus closed that day.

In April 2021, four months after the Cantus closed on the house, there was a storm, and their roof began leaking. To temporarily repair the roof and avoid further damage, the Cantus hired the Beldon Roofing Company (Beldon) and spent $1,315.00. Ultimately, the Cantus

---

[4]In total, it appears, based upon the record before us, that Bravo paid a total of $1,050.00 ($800.00 plus $250.00) to Gonzales for roof repairs prior to closing.

replaced the roof and paid Beldon $164,954.21[5] to replace the roof. To recover the cost of the roof, the Cantus sued Bravo and Gross.

**D.    The Cantus' Lawsuit**

The Cantus pled five causes of action:  (1) breach of contract against Bravo alone; (2) violations of the Texas Deceptive Trade Practices Act (DTPA) against Bravo and Gross; (3) fraudulent misrepresentation or inducement against Bravo and Gross; (4) fraud by non-disclosure against Bravo and Gross; and (5) conspiracy to commit fraud against Bravo and Gross.

The Cantus also pled damages as follows:

> 53.    On June 3, 2021, the CANTUS had to retain roofing services for necessary, immediate temporary repairs to the roof and to mitigate any further damage.  The cost of temporary repairs totaled $1,315.00.  The cost of roof repairs/replacement was $169,954.21.  Moreover, the cost to repair interior damages caused by the pre-existing roof damages is estimated at $8,143.42. Additionally, the CANTUS have incurred reasonable and necessary attorney's fees.

> 54.    On or about July 14, 2021, in accordance with the Texas Business and Commerce Code and the Texas Property Code, the CANTUS sent notice of the above issues and claims to Defendant BRAVO and demand was made therein.

Thereafter, Bravo and Gross both filed no-evidence motions for summary judgment and traditional motions for summary judgment.  The Cantus responded to those motions with exhibits.  The trial court held a hearing to consider those motions.  After the hearing, the trial court entered a final judgment granting Bravo's and Gross's no-evidence and traditional motions for summary judgment and entered a take-nothing judgment against the Cantus.

---

[5]The Cantus claim it was $169,954.21.  This appears to be a mistake.  The full invoice from Beldon provided it was a $164,954.21 contractual price.

The Cantus appealed, claiming that the trial court erred (1) by erroneously excluding their summary judgment evidence, (2) by granting Gross's no-evidence motion for summary judgment, (3) by finding the "as is" clause and BPG's inspection entitled Gross and Bravo to judgment as a matter of law, and (4) by granting Bravo's no-evidence and traditional motions for summary judgment. Because we find that the trial court properly granted Gross's no-evidence motion for summary judgment but improperly granted Bravo's no-evidence and traditional motions for summary judgment, we affirm as to Gross and reverse and remand as to Bravo.

## II. Trial Court Properly Granted Gross's No-Evidence Motion for Summary Judgment

Because they supplied no evidence from an expert on roof damages, the Cantus presented no evidence of damages as to any of their causes of action against Gross. As a result, the trial court properly granted Gross's no-evidence motion for summary judgment.

### A. Standard of Review for a No-Evidence Motion for Summary Judgment

Under Rule 166a(i), a no-evidence motion for summary judgment should be granted when there is "no evidence of one or more essential elements of a claim or defense on which [the Cantus] would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The no-evidence "motion must state the elements as to which there is no evidence." *Id.* The trial court properly granted a no-evidence summary judgment if the Cantus did not produce "summary judgment evidence raising a genuine issue of material fact." *Id.* A no-evidence summary judgment was improperly granted if the Cantus brought "forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied) (citing TEX. R. CIV. P. 166a(i)).

8

In reviewing the grant of a no-evidence summary judgment, the same legal sufficiency standard for reviewing a directed verdict is applied. *Gomez v. Tri City Cmty. Hosp., Ltd.*, 4 S.W.3d 281, 283 (Tex. App.—San Antonio 1999, no pet.). In short, the evidence should be viewed in a "light most favorable" to the Cantus, disregarding all contrary evidence and inferences. *Moore*, 981 S.W.2d at 269 (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Connell v. Connell*, 889 S.W.2d 534, 538 (Tex. App.—San Antonio 1994, writ denied)).

**B.      Gross Properly Raised the Issue of No Evidence of Damages to the Trial Court**

As noted above, the Cantus pled four causes of action against Gross:    (1) DTPA violations, (2) fraudulent misrepresentation or inducement, (3) fraud by non-disclosure, and (4) conspiracy to commit fraud. For each of those four causes of action, evidence of damages is required.[6]

In Gross's no-evidence motion for summary judgment, Gross alleged that the Cantus had presented no evidence of damages as to each of those four causes of action:

> Defendant Gross is entitled to summary judgment as to Plaintiffs' claims of fraudulent misrepresentation and fraudulent inducement because there is no evidence that Plaintiffs sustained any injury directly as a result of any alleged statement of Defendant Gross.

---

[6]*Chain Distrib. v. Am. Freightways, Inc.*, No. 04-02-00071-CV, 2003 WL 288277, at *2 (Tex. App.—San Antonio, Feb. 12, 2003, no pet.) (mem. op.) (requiring a showing of damages under the DTPA); *Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26, 33 (Tex. App.—San Antonio 2003, pet. denied) (finding "tort damages are recoverable for a fraudulent inducement claim"); *1776 Energy Partners, LLC v. Marathon Oil EF, LLC*, No. 04-20-00304-CV, 2023 WL 2669669, at *16 (Tex. App.—San Antonio Mar. 29, 2023, no pet.) (requiring a showing that the claimant's damages were caused by the defendant's culpable acts of fraud by non-disclosure); *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 469 (Tex. App.—San Antonio 1994, writ denied) (requiring damages that "specifically arose from" the "knowing and willful acts which constituted fraud and conspiracy to commit fraud").

. . . .

> Defendant Gross is entitled to summary judgment as to Plaintiffs' claims of conspiracy to commit fraud as there is no evidence that Plaintiff[s] sustained any damages as a result of any alleged conspiracy to commit fraud by Defendant Gross.

. . . .

> Defendant Gross moves for summary judgment on the grounds that there is no evidence that Defendant Gross' alleged acts or omissions under the DTPA were a producing cause of Plaintiffs' damages as alleged by Plaintiffs in their Second Amended Petition.

. . . .

> Defendant Gross moves for summary judgment on the grounds that there is no evidence the Plaintiffs were injured as a result of acting without that knowledge.

Those allegations were in accordance with Rule 166a(i), which requires the movant to "state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i).

## C. The Cantus Provided No Evidence of Damages

The Cantus were required to present expert testimony on the issue of damage to the roof. "A party seeking to recover damages measured by the cost of repair must present competent evidence so that the trier of fact is justified in finding that the repairs are necessary to restore the property to its former condition and that the cost of repairs is reasonable and fair." *Wortham Bros., Inc. v. Haffner*, 347 S.W.3d 356, 360 (Tex. App.—Eastland 2011, no pet.). This is required because such "[e]xpert testimony assists the trier of fact, and is thus admissible, 'when the expert's knowledge and experience on a relevant issue are beyond that of the average juror.'" *Harley Rogers P'ship, Ltd. v. Quick Roofing, LLC*, No. 04-21-00030-CV, 2022 WL 2230954,

at *3 (Tex. App.—San Antonio June 22, 2022, no pet.) (mem. op.) (quoting *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam)).

In the analogous case of *Pjetrovic v. Home Depot*, lay opinion testimony was properly excluded on the cost to repair property where the "repairs [were] of a technical or specialized nature." *Pjetrovic v. Home Depot*, 411 S.W.3d 639, 649 (Tex. App.—Texarkana 2013, no pet.); *see also Montgomery Ward & Co. v. Dalton*, 665 S.W.2d 507, 513 (Tex. App.—El Paso 1983, no writ) (affirming a trial court's determination of roofing damages where an expert testified on that issue).

In their response to Gross's no-evidence motion for summary judgment, the Cantus provided an invoice for the initial repair totaling $1,315.00, an invoice for the final roof replacement of $164,954.21, and an invoice to repair the interior damage of $8,143.42. During the summary judgment hearing, counsel for the Cantus recognized that, while they had designated a non-retained testifying expert, they had only provided invoices as a part of their summary judgment evidence of damages:

> [BY CANTUS' COUNSEL]: So we have attached the documents from Beldon Roofing and we have designated Beldon Roofing as -- specifically Danny Mendez who is the president of the roofing department, we have designated him as a nonretained testifying expert. And so the documents from Beldon do say what they did for the temporary repairs. They show where the leaks were, and that was the slide that I put up there that showed the five areas where there were leaks. Those are in the temporary repair documents that were attached to our summary judgment evidence, as well as the final roof repair bill which shows the additional amounts they had to include for the sheathing and various other damages.

> THE COURT: And did you have anything -- is there anything included with the Beldon documents that says these, you know, were -- the

11

assessment is a reasonable and necessary estimate for the repairs required on this particular roof or –

> [BY CANTUS'COUNSEL]: I don't --

> THE COURT: -- the same areas that were allegedly repaired before the plaintiff's purchased this home?

> [BY CANTUS' COUNSEL]: It does not talk about the condition at the time they purchased the home in the summer of 2020. It only talks about the condition as they are observing it and then what they did to repair it. And I will look for specific language that may talk about reasonableness and necessity. I can't pinpoint it exactly right now.

The summary judgment evidence the Cantus provided on damages did not include an affidavit from their non-retained testifying expert or any other expert testimony.

Consistent with *Wortham Brothers, Inc.,* and *Pjetrovic*, because the Cantus only presented invoices and did not present an affidavit from their non-retained expert and otherwise did not provide any expert testimony on the issue of damages, the trial court properly granted Gross's no-evidence motion for summary judgment. We affirm the no-evidence summary judgment as to Gross.

## III.    The Conspiracy Claim Was Properly Dismissed

Because summary judgment as to Gross was properly granted, the conspiracy claims against Gross and Bravo must necessarily be dismissed. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998) (requiring "two or more persons" for a conspiracy); *see also Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) (recognizing "[t]his Court has repeatedly defined civil conspiracy as 'a combination by two or more persons to accomplish an

unlawful purpose or to accomplish a lawful purpose by unlawful means'") (quoting *Massey v. Armco Steel, Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).

Further, a conspiracy requires a "meeting of the minds." *Ins. Co. of N. Am.*, 981 S.W.2d at 675. Here, in response to Gross's no-evidence motion for summary judgment, the Cantus provided only speculative evidence of such a "meeting of the minds," which is not sufficient evidence to survive summary judgment. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968) (recognizing "proof of conspiracy may be, and usually must be made by circumstantial evidence, . . . but vital facts may not be proved by unreasonable inferences from other facts and circumstances") (citing *Jernigan v. Wainer,* 12 Tex. 189 (1954)).

## IV.     The Trial Court Improperly Granted Bravo's Motions for Summary Judgment

Although the Cantus also provided no evidence of damages as to Bravo, Bravo did not raise that issue before the trial court in its no-evidence and traditional motions for summary judgment. Further, there was summary judgment evidence on the one issue Bravo raised: causation. Consequently, we find that both motions were improperly granted. Summary judgment in favor of Bravo is reversed and remanded.

### A.     Bravo's No-Evidence Motion for Summary Judgment Was Improperly Granted

Unlike Gross, Bravo did not specifically claim in her amended no-evidence motion for summary judgment that the Cantus had no evidence of damages. Instead, Bravo claimed the following: (1) "No Evidence of Causation (All Causes of Action)" and (2) "No Evidence of

13

Conspiracy." Since the conspiracy claim was properly dismissed, we will only consider whether the Cantus presented no evidence of causation.

### 1. Evidence of "Causation" Required to Survive Summary Judgment

For causation, Bravo claims expert testimony is required:

> The [Cantus] have no evidence of probative value that the roof was in need of replacement before the Plaintiffs purchased the property; the alleged misconduct of Ms. Bravo caused either the roof leaks in question, or a need for the roof to be completely replaced. Furthermore, there is no evidence to exclude other plausible causes (e.g., 2/21 freeze/snowstorm or 4/21 wind/rain/hail storm) of the injury or condition of which they complain. Accordingly, Ms. Bravo is entitled to a judgment in her favor, as a matter of law.

We disagree.

A demonstration of "causation" is required for breach of contract, DTPA, and fraud claims.[7] "Causation" and "damages" are, however, different elements of the claims the Cantus pled against Bravo. *See U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 218–19 (Tex. App.—San Antonio 2012, pets. denied). As found by the Fourth Court of Appeals, the issue of whether the damage to a roof was caused by one storm or another or both "is an issue of causation within the common knowledge and general experience of a lay person." *Id.* at 218. Expert testimony is not generally required: "a lay witness is competent to state based on personal observation and common sense whether hail fell on a particular location on a particular date, and to make a

---

[7]*See Celadon Trucking Servs., Inc. v. Lugo's Sec. Agency*, No. 04-05-00018-CV, 2005 WL 2401886, at *4 (Tex. App—San Antonio Sept. 28, 2005, no pet.) (mem. op.) (citing *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981) (recognizing that, "[i]n an action for a breach of contract, actual damages may be recovered when the loss is the natural, probable, and foreseeable consequence of the defendant's conduct"); *Smith v. Levine*, 911 S.W.2d 427, 431–32 (Tex. App.—San Antonio 1995, writ denied) (recognizing "producing cause" is required for a DTPA cause of action); *Gen. Cap. Grp. Beteligungsberatung GMBH v. AT & T*, 407 S.W.3d 507, 510 (Tex. App.—Dallas 2013, pet. denied) (recognizing "recovery for fraud requires proof that the defendant's alleged false representation caused the plaintiff['s] injury") (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

logical connection between the hail event and the property damage existing after the storm." *Id.* Based upon the claims the Cantus presented, we find that, unlike their claim for damages, the question of whether the roof damage was present prior to closing or whether it resulted from an after-closing storm did not require expert testimony.

### 2. The Trial Court Erred in Excluding the Cantus' Summary Judgment Evidence

A trial court's decision to exclude summary judgment evidence is reviewed under an abuse-of-discretion standard. *Starwood Mgmt., LLC by and through Gonzalez v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). "When a trial court fails 'to analyze or apply the law correctly,' it has clearly abused its discretion." *In re Auburn Creek Ltd. P'ship*, 655 S.W.3d 837, 840 (Tex. 2022) (per curiam) (orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). Here, critical to the issue of causation, the trial court excluded the text message exchanges between Bravo and Gonzales regarding the roof repairs.[8] They were excluded on hearsay and relevance grounds. We find this was an error.

An exception to the hearsay rule is Rule 801(e)(2) of the Texas Rules of Evidence, which is broad in scope and classifies "***an opposing party's statement***" as "not hearsay." TEX. R. EVID. 801(e)(2). This rule applies when

> [t]he statement is offered against an opposing party and:
>
> (A)    was made by the party in an individual or representative capacity;
>
> (B)    is one the party manifested that it adopted or believed to be true;

---

[8]The trial court also excluded other evidence, including the prior roofing reports and information related to Bravo's notice of the roof defect. We do not address the admissibility of this evidence since we do not find it dispositive as to whether there is a probative fact issue on causation.

15

(C)   was made by a person whom the party authorized to make a statement on the subject;

(D)   was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

(E)   was made by the party's coconspirator during and in furtherance of the conspiracy.

*Id.* Upon review of the exchanges, we find they are statements made by Bravo and offered against Bravo as a party opponent and do not qualify as hearsay under Rule 801(e)(2). The trial court erred in classifying the exchanges as hearsay.

Further, the trial court erred in excluding that information on relevancy grounds. Under Rule 401 of the Texas Rules of Evidence, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. The text messages are clearly relevant to Bravo's allegedly fraudulent behavior. Thus, the trial court erred in excluding them on relevancy grounds.

### 3.   The Cantus Presented Probative Evidence of Causation

In their response to Bravo's no-evidence motion for summary judgment and supporting evidence, the Cantus submitted probative evidence of causation. The summary judgment evidence demonstrates the Cantus increased their offer from $750,000.00 to $844,000.00. That increase was made in a two-day time period with the first offer being on November 15, 2020, and the second offer on November 17, 2020. The only condition on the increased offer was repair to the roof. Viewing facts in a light most favorable to the Cantus, as is required in reviewing a trial court's grant of a no-evidence motion for summary judgment, the likely

16

inference is that the increase of $94,000.00 was a bargained-for increase to have the roof repaired or replaced for that amount. *See Moore*, 981 S.W.2d at 269.

Vortex then purportedly repaired the roof. The Cantus re-inspected the roof and submitted the needed repairs to Gross. Gross then ultimately submitted that report to Bravo, and Bravo directed Gonzales at Vortex to not correct any additional problems. After the first set of repairs were completed, the summary judgment evidence is that Gonzales only repaired a minor issue. Based upon that evidence, a reasonable inference can be drawn that the roof was not repaired in accordance with the re-inspection. Gonzales's testimony that no additional repairs were needed because there were "no leaks" supports this inference. Thereafter, despite the fact the repairs may not have been done, Bravo represented, through her agent, that all of the repairs had been done. Again, viewing the facts in a light most favorable to the Cantus, the jury could have inferred that Bravo, while affirmatively representing the repairs were done, intentionally directed Gonzales to not perform any additional repairs.

The Cantus were under the impression that "[they] gave a list of repairs, per the inspector, that [the inspector] put on the inspection sheet, and that [Bravo and Gross] were supposed to repair[] those things. . . . It meant to [them] that the last repair was done, so [they] were] finished." The Cantus then signed the buyer's walk-through acceptance form at closing "based on information . . . received from [the] seller's agent saying that everything had been taken care of." Viewing this evidence in a light most favorable to the Cantus, this evidence is more than a "scintilla of probative evidence" on causation. *Id.* (citing TEX. R. CIV. P. 166a(i)). Notably, "but for" Bravo's conduct in purportedly breaching her contract, violating the DTPA,

17

and making fraudulent misrepresentations to the Cantus, the Cantus would not have closed on the house.

### 4. "As-Is" Clause Does Not Negate Causation and Reliance

Bravo claims the "as is" clause in the contract and from the Cantus' "walk through" negated causation. We disagree.

Generally, an "as is" clause does negate causation. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995) (recognizing "[a] valid 'as is' agreement . . . prevents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid because it is impossible for the buyer's injury on account of this disparity to have been caused by the seller").

For two reasons, the "as is" clause in this case does not negate causation. First, the Cantus have pled fraud, and there is evidence of fraud. Bravo cannot avoid an allegation of fraud simply by placing an "as is" clause in the contract and as a part of the "walk through" acceptance:

> A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase "as is", [sic] and then disavow the assurance which procured the "as is" agreement. Also, a buyer is not bound by an "as is" agreement if he is entitled to inspect the condition of what is being sold but is impaired by the seller's conduct.

*Id.* at 162.

Second, it is important to note that, even though the "walk through" statement indicated that the Cantus accepted the property in its "present condition," the "as is" clause in the contract contained the following caveat: "Buyer accepts the Property As Is provided Seller, at Seller's

18

expense, shall complete the following specific repairs and treatments: Roof to be repaired according to homeowner, seller to provide a copy of the letter of opinion from the insurance company." Viewing facts in a light most favorable to the Cantus, there is a fact issue as to whether the Cantus abandoned their prior agreed-upon contract by signing the "walk through" statement. Furthermore, as recognized above, there is a fact issue as to whether the roof was "repaired" consistent with the agreement of the Cantus and Bravo. Thus, viewing facts in a light most favorable to the Cantus, we cannot find this qualified "as is" clause negated causation.

## B. Bravo's Traditional Motion for Summary Judgment Was Improperly Granted

Because the trial court improperly granted Bravo's no-evidence motion for summary judgment, we next consider whether the trial court properly granted Bravo's traditional motion for summary judgment. Because we find that motion was also improperly granted, we reverse and remand.

"We review a trial court's ruling on a motion for summary judgment de novo." *Bell v. Petsch*, No. 04-22-00371-CV, 2023 WL 5603195, at *2 (Tex. App.—San Antonio Aug. 30, 2023, no pet. h.) (mem. op.) (citing *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 278 (Tex. 2018)). To prevail on a traditional motion for summary judgment, Bravo must show that "no genuine issue" of material fact exists and that she is "entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c). As with the no-evidence motion for summary judgment, a traditional "motion for summary judgment shall state the specific grounds therefor." *Id.*

19

In her traditional motion for summary judgment, Bravo claimed she was entitled to summary judgment for the following three reasons: (1) there was no breach of contract, (2) the independent inspection negated causation and reliance, and (3) the "as is" clause negated reliance and causation. Bravo did not claim she was entitled to summary judgment because the evidence of damages was insufficient. As with Bravo's no-evidence motion for summary judgment, we find Bravo's traditional motion for summary judgment was also granted in error.

### 1. There Is Probative Evidence of Breach of Contract

Bravo claimed in her traditional motion for summary judgment that she was entitled to summary judgment on her breach of contract claim. She claimed that, under the terms of the contract, she agreed to "make certain repairs, which would be subject to approval by the [Cantus]," Bravo made repairs on two occasions, and the Cantus chose to accept the property "as is."

Viewing the facts in a light most favorable to the Cantus, we find that there is a genuine issue of material fact as to breach of contract and that the trial court erred in granting summary judgment on this basis. As recognized above, the "as is" agreement that the Cantus made was limited and required the repair of the roof. The fact the Cantus signed a "walk through" statement prior to closing did not negate their breach of contract claim where the "present condition" of the property presumably included a repaired roof, and their contract stated the property was purchased "as is" with a repaired roof. Indeed, the original contract between the Cantus and Bravo with a qualified "as is" clause, coupled with the circumstances surrounding the

20

closing as outlined above, create a fact issue as to whether Bravo breached her contract with the Cantus.

### 2.    Independent Inspection Did Not Negate Causation

Bravo claimed to the trial court that she was entitled to summary judgment on the Cantus' DTPA and fraud claims.  Bravo claimed that "a buyer's independent inspection precludes a showing of causation and reliance if it reveals to the buyer the same information that the seller allegedly failed to disclose."  *Williams v. Dardenne*, 345 S.W.3d 118, (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

The Cantus' conduct in hiring their own inspector and in agreeing to purchase the property after a final walk through does not negate causation.  *See Smith v. Levine*, 911 S.W.2d 427, 431–32 (Tex. App.—San Antonio 1995, writ denied).   Where Bravo had "actual knowledge" of the extent of the problem with the roof and made affirmative steps to misrepresent the extent of repairs that were completed, the Cantus should not be penalized for not discovering the extent of the problems with the roof.  *See id.* at 431.  Bravo can be held liable for misrepresentations related to that information and for causing the Cantus to rely on that information even when the Cantus "were or should have been equally aware" of the problem.  *Id.*

Again, although the Cantus had an inspector, that inspector was not a roof inspector, and there is a fact issue as to whether the Cantus had the same information that Bravo had.  Viewing the facts in a light most favorable to the Cantus, Bravo represented, through her agent, that the repairs were completed and the roof was repaired.  That was a day before closing and certainly was information that the Cantus did not have.  Further, Bravo directed Gonzales to do no

21

additional repairs, despite being notified by the Cantus of additional problems. Viewing facts in a light most favorable to the Cantus, this is probative evidence of causation and reliance.

### 3. "As Is" Clause at "Walk Through" Did Not Negate Causation

Bravo claimed to the trial court that she was also entitled to summary judgment on her fraud claims because the Cantus accepted the property "as is." Bravo claimed that, "[b]y agreeing to purchase the property 'as is,' buyers such as the [Cantus] commit to make their own appraisal of the bargain and to accept the risk that they may be wrong." We disagree.

As outlined above, the contract was more than a general "as is" contract, and Bravo had agreed to the "[r]oof to be repaired according to homeowner." Further, the fact that the Cantus signed the "walk through" statement did not negate the prior agreement to repair the roof, especially when there was probative evidence that the Cantus were defrauded into signing the "walk through" statement. Viewing the facts in a light most favorable to the Cantus, there is evidence of reliance and causation despite the "as is" clause.

## V. Conclusion

Accordingly, we affirm in part, reverse in part, and remand the case back to the trial court for further consideration of the Cantus' breach of contract, DTPA, and fraud claims against Bravo.

Jeff Rambin
Justice

Date Submitted: January 23, 2024
Date Decided: August 22, 2024

22